Boonstra, P.J.
*164 Plaintiff appeals by right the trial court's order denying its motion for summary disposition and granting the cross-motion for summary disposition filed by defendants the Michigan Assigned Claims Plan and the Michigan Automobile Insurance Placement Facility (collectively, defendants). We affirm and remand for further proceedings consistent with this opinion.
I. PERTINENT FACTS AND PROCEDURAL HISTORY
This case arises out of an automobile accident that occurred on September 4, 2014. Zoie Bonner was a passenger in a 2003 Ford Taurus driven by her boyfriend, Philip Kerr, when it rear-ended another vehicle. The Taurus was owned by Bonner's aunt or uncle and was insured under an automobile insurance policy issued by Citizens Insurance Company of the Midwest (Citizens). The police report generated by the Jackson Police Department concerning the accident identified the applicable insurance for the Taurus as "Citizens Insurance." It also contained Kerr's name, a description of the vehicle, the vehicle registration number, and *165 the vehicle identification number. It did not, however, identify Bonner as a passenger in the Taurus or as an injured party. Bonner did not seek immediate medical attention, but she was treated for rib pain by plaintiff's emergency department the following day. Bonner's emergency department chart indicates that she told medical providers that she was involved in a motor vehicle accident the previous day in which she was a passenger in a vehicle that had rear-ended another vehicle. It does not appear that any employees of plaintiff asked Bonner about applicable automobile insurance. Plaintiff provided Bonner with medical services valued at $9,113.
During the year following the accident, plaintiff repeatedly attempted to contact Bonner to obtain information concerning applicable insurance coverage. Plaintiff *41 sent letters, telephoned Bonner, and hired a private investigator eight months after the accident. The private investigator eventually made contact[1] with Bonner in June 2015. Bonner stated that neither she nor her boyfriend had automobile insurance but that her aunt owned the vehicle that Kerr had been driving. Neither plaintiff nor its investigator obtained any contact information for Bonner's aunt or boyfriend, apparently failing even to obtain Bonner's aunt's or Kerr's name. They also did not obtain the police report from the accident.
On September 3, 2015 (one day before the one-year anniversary of the accident), plaintiff filed a claim with defendants, seeking no-fault personal protection insurance benefits (also called personal injury protection benefits or PIP benefits) on Bonner's behalf under *166 Michigan's no-fault insurance act, MCL 500.3101 et seq . Under the no-fault act, an injured person may seek PIP benefits from defendants within one year of the injury when no personal protection insurance applicable to the injury can be identified. MCL 500.3172(1) ; MCL 500.3145.[2] The following day, and before any response from defendants, plaintiff filed suit requesting that the trial court enter a judgment declaring that defendants had a duty to promptly assign its claim to an insurer and that, upon assignment, the insurer would be responsible to process and pay the claim.
On September 17, 2015, defendants responded to plaintiff's claim with a letter indicating that it was unable to process the claim without additional information. The letter requested that additional information be forwarded to defendants and stated that the claim would be reviewed once complete information was received. In October 2015, defendants answered plaintiff's complaint, asserting, among other defenses, that plaintiff had failed to state a claim for which relief could be granted, that plaintiff had not submitted a completed claim for PIP benefits, that defendants did not owe benefits because they were not "incurred" by Bonner, and that plaintiff was precluded from obtaining relief because plaintiff had "failed to obtain primary coverage within the obligation of the primary carrier(s)" to the detriment of defendants.
Bonner was deposed in December 2015. She testified that her aunt owned the vehicle and maintained insurance on it,[3] although she did not know the name of the *167 insurer. Citizens was subsequently identified as the insurer of the vehicle. Plaintiff attempted to submit a claim for PIP benefits to Citizens, but Citizens denied the claim as being beyond the one-year deadline contained in MCL 500.3145.
Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's claim was ineligible for assignment because applicable insurance had been identified and because plaintiff could have recovered PIP benefits from Citizens if it had acted in a timely fashion. Plaintiff responded and also moved for summary disposition, arguing that defendants were required to promptly assign plaintiff's claim at the time of the claim application unless the claim was obviously ineligible *42 and that defendants had failed to do so. Plaintiff argued that the subsequent discovery of information concerning the Citizens policy did not alter this obligation.
After a hearing on the parties' motions, the trial court denied plaintiff's motion for summary disposition and granted defendants' motion for summary disposition, reasoning that plaintiff had failed to demonstrate that it could not have identified applicable insurance at the time it submitted its application for PIP benefits to defendants. Further, plaintiff could have learned of the Citizens policy if it had filed suit directly against Bonner for the unpaid medical bills, if it had obtained proper information from Bonner at the time of treatment, if it had obtained the police report concerning the automobile accident, or if it had followed up on information that Bonner's aunt owned the vehicle in question.
This appeal followed. During the pendency of this appeal, our Supreme Court issued its opinion in Covenant Med. Ctr., Inc. v. State Farm Mut. Auto Ins. Co. , 500 Mich. 191, 895 N.W.2d 490 (2017). Covenant reversed *168 decisions of this Court that had recognized that healthcare providers could maintain direct causes of action against insurers to recover PIP benefits, instead holding that no such statutory cause of action exists. Id ., at 195-196, 895 N.W.2d at 493. On August 1, 2017, defendants filed motions with this Court for immediate consideration and for leave to file a nonconforming supplemental authority brief addressing Covenant and its effect on this case. This Court granted the motions and accepted the supplemental briefs that had been submitted by both plaintiff and defendants.[4]
II. STANDARD OF REVIEW
This Court reviews de novo the grant or denial of motions for summary disposition under MCR 2.116(C)(10). See Johnson v. Recca , 492 Mich. 169, 173, 821 N.W.2d 520 (2012). MCR 2.116(C)(10) provides that a trial court may grant judgment on all or part of a claim when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." West v. Gen. Motors Corp. , 469 Mich. 177, 183, 665 N.W.2d 468 (2003). We also review de novo questions of statutory interpretation, see Saffian v. Simmons , 477 Mich. 8, 12, 727 N.W.2d 132 (2007), as well as whether a judicial decision applies retroactively, McNeel v. Farm Bureau Gen. Ins. Co. of Mich. , 289 Mich.App. 76, 94, 795 N.W.2d 205 (2010).
*169 III. ANALYSIS
Plaintiff argues that the trial court improperly granted defendants' motion for summary disposition and instead should have granted summary disposition in favor of plaintiff because defendants were obligated to assign its claim to an insurer under MCL 500.3172(1). Because we hold that Covenant controls this issue and applies to this case, we disagree. We therefore affirm the trial court's grant of summary disposition in favor of defendants, albeit for reasons other than those stated by the trial court. We remand this case to the trial court for further proceedings consistent with this opinion.
*43 A. GENERAL LEGAL PRINCIPLES UNDER THE NO-FAULT ACT
Michigan's no-fault insurance act, MCL 500.3101 et seq ., requires motor vehicle owners or registrants to carry no-fault insurance coverage that provides for PIP benefits. PIP benefits are payable "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle...." MCL 500.3105(1). When a person suffers injury as the result of a motor vehicle accident, the person typically has one year to commence an action to recover PIP benefits. MCL 500.3145(1). The injured person must look first to his or her own no-fault policy or to a no-fault policy issued to a relative with whom he or she is domiciled. MCL 500.3114(1) ; see also Corwin v. DaimlerChrysler Ins. Co. , 296 Mich.App. 242, 262, 819 N.W.2d 68 (2012). If neither the injured person nor any relatives with whom the person is domiciled have no-fault coverage, the person may seek to recover benefits from "[t]he insurer of the owner or registrant of the vehicle occupied" and "[t]he insurer of the operator of the *170 vehicle occupied," in that order. MCL 500.3114(4). If the person is unable to recover under any of these options, the person may seek PIP benefits through Michigan's assigned claims plan[5] under MCL 500.3172(1), which provides:
A person entitled to [a] claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. In that case, unpaid benefits due or coming due may be collected under the assigned claims plan and the insurer to which the claim is assigned is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility.
Accordingly, a person may recover PIP benefits from the assigned claims plan when (1) no personal protection insurance is applicable to the injury, (2) no personal protection insurance applicable to the injury can be identified, (3) the applicable insurance cannot be ascertained due to a dispute among insurers, or (4) the only applicable insurance is inadequate due to financial inability. See MCL 500.3172(1) ;
*171 Spectrum Health v. Grahl , 270 Mich.App. 248, 251-252, 715 N.W.2d 357 (2006).[6]
*44 B. THE COVENANT DECISION
MCL 500.3112 states, in pertinent part, that "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents." Before our Supreme Court's decision in Covenant , this Court had held that this language permitted a healthcare provider who had provided services to an insured to seek recovery of those benefits directly from the insurer. See Wyoming Chiropractic Health Clinic, PC v. Auto-Owners Ins. Co. , 308 Mich.App. 389, 401, 864 N.W.2d 598 (2014), overruled by Covenant , 500 Mich. at 191, 895 N.W.2d at 494. In Covenant , our Supreme Court examined the language of MCL 500.3112 and held that the statute did not create an independent cause of action for healthcare providers to pursue PIP benefits from an insurer. Covenant . 500 Mich. at 195, 895 N.W.2d at 493. Our Supreme Court also determined that no other provision of the no-fault act grants a statutory cause of action to a healthcare provider for recovery of PIP benefits from an insurer:
*172 And further, no other provision of the no-fault act can reasonably be construed as bestowing on a healthcare provider a statutory right to directly sue no-fault insurers for recovery of no-fault benefits. We therefore hold that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act. The Court of Appeals caselaw concluding to the contrary is overruled to the extent that it is inconsistent with this holding.
* * *
In sum, a review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges. However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [ Id . at 196, 217-218, 895 N.W.2d at 497-506, 504-05 (citation omitted).]
Although our Supreme Court did not specifically address MCL 500.3172(1) in its analysis, it is clear from the opinion in Covenant that healthcare providers such as plaintiff cannot pursue a statutory cause of action for PIP benefits directly from an insurer. Nothing in Covenant or the language of MCL 500.3172(1) suggests a different outcome when a healthcare provider seeks benefits from an insurer assigned by defendants as opposed to a known insurer.[7] Indeed, it would seem nonsensical to prohibit direct actions by healthcare providers seeking PIP benefits from known *173 insurers while permitting such direct actions by healthcare providers when there is no known or applicable insurer. See Turner v. Auto Club Ins. Ass'n. , 448 Mich. 22, 28, 528 N.W.2d 681 (1995) ("[W]hen courts interpret a particular phrase in a statute, they must, whenever possible, construe *45 the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute."). Accordingly, because our Supreme Court has determined that a healthcare provider cannot maintain a direct action for PIP benefits under the no-fault act and because nothing in MCL 500.3172(1) creates an exception to that rule, Covenant bars plaintiff's claim if its holding is applicable in this case. The question then becomes whether Covenant applies only prospectively or whether it applies to cases pending on appeal when it was issued. This question was the subject of the parties' supplemental briefing.
C. WAIVER AND PRESERVATION
Before reaching that question, we must decide whether it is properly before us. We conclude that it is. We find unpersuasive plaintiff's assertion that defendants waived or failed to preserve the issue of whether plaintiff possessed a statutory cause of action against them. First, the defense of "failure to state a claim on which relief can be granted" is not waived even if not asserted in a responsive pleading or motion. MCR 2.111(F)(2). Second, defendants asserted such an affirmative defense in this case and also asserted the defenses that plaintiff lacked standing to sue and that defendants did not owe benefits to plaintiff because plaintiff was not the one who had "incurred" them. This, in essence, is an assertion that plaintiff did not have a statutory right to sue defendants directly, in *174 recognition of our holding that MCL 500.3112"confers a cause of action on the injured party and does not create an independent cause of action for the party who is legally responsible for the injured party's expenses." Hatcher v. State Farm Mut. Auto. Ins. Co. , 269 Mich.App. 596, 600, 712 N.W.2d 744 (2006). Rather, "the right to bring an action for personal protection insurance benefits ... belongs to the injured party." Id .[8] Third, given the state of the caselaw at the time of the proceedings in the trial court and defense counsel's statements at the summary disposition motion hearing, it is clear that counsel was aware that then-applicable Court of Appeals precedent likely would have rendered any such argument futile at the time. Finally, while plaintiff cites Dell v. Citizens Ins. Co. of America , 312 Mich.App. 734, 751 n. 40, 880 N.W.2d 280 (2015), for the proposition that "[g]enerally, an issue must be raised, addressed, and decided in the trial court to be preserved for review," this Court said in its very next breath that "[t]his Court may [nonetheless] address the issue because it concerns a legal question and all of the facts necessary for its resolution are present," id . The same is true here. We therefore conclude that the issue has not been waived and has been adequately preserved.[9] *46 *176 D. RETROACTIVITY VERSUS PROSPECTIVITY
1. GENERAL PRINCIPLES
" '[T]he general rule is that judicial decisions are to be given complete retroactive effect.' " McNeel , 289 Mich.App. at 94, 795 N.W.2d 205, quoting Hyde v. Univ. of Mich. Bd. of Regents , 426 Mich. 223, 240, 393 N.W.2d 847 (1986) (alteration by the McNeel Court).[10] " 'We have often limited the application of decisions which have overruled prior law or reconstrued statutes. Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law.' " McNeel, 289 Mich.App. at 94, 795 N.W.2d 205. quoting Hyde , 426 Mich. at 240, 393 N.W.2d 847. If a rule of law announced in an opinion is held to operate retroactively, it applies to all cases still open on direct review. Id . at 94, 795 N.W.2d 205, citing Harper v. Virginia Dep't of Taxation , 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). On the *47 other hand, a rule of law that applies only prospectively does not apply to cases still open on direct review and does "not even apply to the parties in the case[ ]" in which the rule is declared. McNeel , 289 Mich.App. at 94, 795 N.W.2d 205. *177 2. SUMMARY OF THE PARTIES' POSITIONS
Plaintiff would have us follow a line of cases that employ a "flexible approach" to determining whether a judicial decision has retroactive effect. See, e.g., Bezeau v. Palace Sports & Entertainment, Inc. , 487 Mich. 455, 462, 795 N.W.2d 797 (2010) (opinion by WEAVER, J.) ("In general, this Court's decisions are given full retroactive effect. However, there are exceptions to this rule. This Court should adopt a more flexible approach if injustice would result from full retroactivity. Prospective application may be appropriate where the holding overrules settled precedent.") (citations omitted); see also Tebo v. Havlik , 418 Mich. 350, 360, 343 N.W.2d 181 (1984) (opinion by BRICKLEY, J.) ("Although it has often been stated that the general rule is one of complete retroactivity, this Court has adopted a flexible approach."). Under this line of reasoning, "resolution of the retrospective-prospective issue ultimately turns on considerations of fairness and public policy." Riley v. Northland Geriatric Ctr. (After Remand) , 431 Mich. 632, 644, 433 N.W.2d 787 (1988) (opinion by GRIFFIN, J.); see also Placek v. Sterling Heights , 405 Mich. 638, 665, 275 N.W.2d 511 (1979). Plaintiff argues that it would be unfair to apply Covenant retroactively because plaintiff and others have relied on a long line of pre- Covenant decisions from this Court that recognized a healthcare provider's statutory right to bring suit against an insurer under MCL 500.3112. Plaintiff further argues that Covenant satisfies the initial threshold question for determining whether prospective application is warranted, i.e., "whether the decision clearly established a new principle of law." Pohutski v. City of Allen Park , 465 Mich. 675, 696, 641 N.W.2d 219 (2002). Having thus satisfied the threshold question, plaintiff argues that the resulting three-factor *178 test for prospective application is also satisfied. See id . ("[T]hree factors [are] to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.").
Defendants concede that a certain level of unfairness exists whenever judicial decisions alter the actual or perceived state of the law, but counter that such a flexible approach would turn every court into a court of equity. Defendants further recognize that the threshold question and three-factor test have been often repeated in Michigan caselaw. But defendants characterize prospective judicial decision-making as "a relatively new and somewhat novel concept that conflicts with the traditional fundamental understanding of the nature of the judicial function." Defendants therefore advance a line of cases that recognize that the general and usual rule is that of retroactivity. Under this line of reasoning, "[p]rospective application is a departure from [the] usual rule and is appropriate only in 'exigent circumstances,' " Devillers v. Auto Club Ins. Ass'n , 473 Mich. 562, 586, 702 N.W.2d 539 (2005) (citation omitted) (retroactively overruling a 19-year-old legal precedent determined to be inconsistent with plain statutory language), that warranting "the 'extreme measure' of prospective application," Wayne Co. v. Hathcock , 471 Mich. 445, 484 n. 98, 684 N.W.2d 765 (2004) (retroactively overruling a 23-year-old legal precedent determined to be inconsistent with proper constitutional interpretation), *48 citing Gladych v. New Family Homes, Inc. , 468 Mich. 594, 605, 664 N.W.2d 705 (2003) (retroactively overruling a 32-year-old legal precedent determined to be inconsistent with plain statutory language). *179 Even more fundamentally, defendants argue that the United States Supreme Court in Harper definitively established that judicial decisions regarding federal law "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule," Harper , 509 U.S. at 97, 113 S.Ct. 2510, and that the Michigan courts have essentially adopted (or, alternatively, that we should adopt) that definitive rule in Michigan state court jurisprudence. Indeed, defendants argue that it is difficult to discern any reason why the Harper reasoning would not "perfectly harmonize" with Michigan jurisprudence and that it can no more be said of Michigan jurisprudence (than of federal jurisprudence) that we can "permit 'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." Id . (citation omitted; alterations by the Harper Court).
Defendants further argue that Covenant did not establish a new principle of law but instead corrected judicial misinterpretations of statutory law to return the law to what it always had been, such that the threshold question of Pohutski , if applicable, is not satisfied. Defendants do not concede that Pohutski 's three-factor test, if applicable, favors prospective application of Covenant but acknowledge that their stronger arguments lie elsewhere.
3. UNPACKING THE EVOLVING CASELAW
On the basis of our analysis of the shifting sands of the evolving caselaw-both in Michigan and in the United States Supreme Court-on the issue of the retroactivity/prospectivity of judicial decisions, we conclude *180 that it would be nigh to impossible to divine a rule of law that lends complete consistency and clarity to the various espousements of the Courts, with their shifting makeups, over the years. Rather, the caselaw has evolved over time and, in at least some respects, is not today where it once was.
The one constant is that the general rule is, and always has been, that judicial decisions apply retroactively. The jurisprudential debate over the years has instead been over whether and under what circumstances deviations should be made from the general rule of retroactivity. The underpinnings of what we have described, for purposes of Michigan state court jurisprudence, as the "threshold question" and "three-part test" of Pohutski derive from decisions of the United States Supreme Court in Linkletter v. Walker , 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Chevron Oil Co. v. Huson , 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971). Subsequently, and without belaboring the path that led to Harper , the United States Supreme Court ultimately reversed the direction it had taken in those cases and instead definitively adopted the following rule:
When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. [ Harper , 509 U.S. at 97, 113 S.Ct. 2510.]
*49 State courts nonetheless appear to remain free to adopt their own approach to retroactivity under state law, so long as it does not extend to an interpretation of federal law. See id . at 100, 113 S.Ct. 2510 ("Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law cannot extend to *181 their interpretations of federal law.") (citations omitted). See also Great N. R. Co. v. Sunburst Oil & Refining Co. , 287 U.S. 358, 364-366, 53 S.Ct. 145, 77 L.Ed. 360 (1932) ; Riley , 431 Mich. at 644, 433 N.W.2d 787 (opinion by GRIFFIN, J.). And indeed, the Michigan courts did so, adopting and applying the "threshold question" and "three-part test" in numerous cases over the years.
Defendants concede that the Michigan Supreme Court has never expressly adopted the reasoning of Harper into Michigan jurisprudence and indeed that no Michigan appellate court has actually considered whether the Harper rule should be adopted in Michigan. Nonetheless, defendants invite us to read this Court's citation of Harper in McNeel as effectively extending the Harper rule to Michigan's state court jurisprudence so as to require that all decisions of the Michigan Supreme Court (like Covenant ) must be given full retroactive effect. We decline that invitation, inasmuch as McNeel did not cite Harper in order to mandate retroactivity but rather merely to explain that when a decision applies retroactively, it applies to all pending cases.[11]
We must therefore consider defendants' alternative invitation to so extend Harper ourselves. We are an error-correcting Court, however, and such a determination is therefore one that is best decided by our Supreme Court in the first instance. See *182 People v. Woolfolk , 304 Mich.App. 450, 475, 848 N.W.2d 169 (2014). We therefore look to the current state of our Supreme Court's pronouncements on the issue for guidance. In Spectrum Health Hosps. v. Farm Bureau Mut. Ins. Co. of Mich. , 492 Mich. 503, 821 N.W.2d 117 (2012), the Court overturned an earlier judicial interpretation of a provision of the no-fault act, just as it later did in Covenant .[12] As in Covenant , the Court did so on the basis of its conclusion that the earlier judicial decision was inconsistent with the plain meaning of the statute. The Court in Spectrum Health held that its decision was "retrospective in its operation," and it did so without undertaking any analysis of the Pohutski "threshold question" or "three-factor test." Spectrum Health , 492 Mich. at 537, 821 N.W.2d 117. Instead, its stated rationale was as follows:
" 'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective *50 in its operation, and the effect is not that the former decision is bad law, but that it never was the law.' " This principle does have an exception: When a
"statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."
[ Id . at 536, 821 N.W.2d 117 (citations omitted).]
*183 Given that this is the most recent pronouncement of our Supreme Court on this issue, it is critical to informing our analysis of whether Covenant should be applied retroactively or prospectively.
4. AS APPLIED TO COVENANT
a. DISCERNING DIRECTION FROM THE SUPREME COURT IN AND AFTER COVENANT
Defendants argue that the Supreme Court conclusively determined in Covenant itself that its decision applied retroactively. While defendants acknowledge that neither the words "retroactive" nor "prospective" appear in the Court's opinion, defendants glean a conclusive determination of retroactivity from the Court's remand of the case to the trial court for entry of summary disposition in favor of the defendant-insurer. In effect, this is a restatement of defendants' position regarding the applicability of Harper to Michigan state court jurisprudence. Plaintiff argues, to the contrary, that the remand for entry of summary disposition is not dispositive, pointing out that this Court has occasionally declared a case to have only prospective effect despite the fact that our Supreme Court had applied its holding to the parties before it. In support of this argument, plaintiff cites our decision in People v. Gomez , 295 Mich.App. 411, 820 N.W.2d 217 (2012), concerning the prospective effect of a United States Supreme Court decision announcing a new rule of criminal procedure. However, we conducted that analysis under federal law regarding changes to criminal procedure, under which "a new rule of criminal procedure generally cannot be applied retroactively to alter a final judgment." Id . at 415, 820 N.W.2d 217. And although we did declare that our Supreme Court's decision in *184 Rory v. Continental Ins. Co., 473 Mich. 457, 703 N.W.2d 23 (2005), was prospective only, see West v. Farm Bureau Gen. Ins. Co. of Mich. (On Remand ), 272 Mich.App. 58, 60, 723 N.W.2d 589 (2006), our Supreme Court applied Rory retroactively two years later in McDonald v. Farm Bureau Ins. Co. , 480 Mich. 191, 205-206, 747 N.W.2d 811 (2008).
Nonetheless, and particularly because the Supreme Court has not expressly adopted the Harper rationale, we accept plaintiff's position that the Supreme Court's remand in Covenant (for entry of summary disposition) is not necessarily dispositive, and we therefore will assume for purposes of this opinion that we have the authority to decide the issue of retroactivity. However, the Supreme Court has not only remanded Covenant for entry of summary disposition, but it has also subsequently remanded at least two cases to this Court for reconsideration in light of Covenant in lieu of granting leave to appeal. See Bronson Methodist Hosp. v. Mich. Assigned Claims Facility , 500 Mich. 1024, 897 N.W.2d 735 (2017) ; Spectrum Health Hosps. v. Westfield Ins. Co. , 500 Mich. 1024, 897 N.W.2d 166 (2017). Thus, the Supreme Court both applied the rule of law it announced in Covenant to the parties before it and also directed this Court to consider Covenant 's application to *51 cases pending on direct appeal. While still not dispositive, we interpret both actions as suggesting that the Court did not intend the rule of law announced in Covenant to be applied prospectively only.
b. SPECTRUM HEALTH IS DISPOSITIVE
We next must address the question of how to apply the caselaw that we have endeavored to unpack in this opinion. As noted, we find little basis on which to reconcile the various pronouncements of the Courts over time. We are therefore guided by two parallel *185 considerations: (1) the evolution of the caselaw in the United States Supreme Court and (2) the evolution of the caselaw in the Michigan Supreme Court.
As we have indicated, the latter derived from the former. That is, the principles adopted and applied by the Michigan Supreme Court with respect to retroactivity/prospectivity had their genesis in the jurisprudence of the United States Supreme Court. That does not necessarily mean that Michigan jurisprudence will continue to follow (for state law purposes) the jurisprudence of our nation's highest Court, but we find it instructive nonetheless.
The evolution of the caselaw in the United States Supreme Court culminated in Harper , wherein, as we have noted, the Court definitively held:
When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. [ Harper , 509 U.S. at 97, 113 S.Ct. 2510.]
The evolution of the caselaw in the Michigan Supreme Court has culminated to date in Spectrum Health , wherein, as we have also noted, the Court held:
" 'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law.' "[13] [ Spectrum Health , 492 Mich. at 536, 821 N.W.2d 117 (citation omitted).]
*186 At its core, this means that notwithstanding the understandable reliance of plaintiff and others on prior decisions of this Court, those decisions did not represent "the law." Rather, "the law" in this instance is the pronouncement of the Legislature in the statutory text of MCL 500.3112. Absent legislative revision, that law is immutable and unmalleable; its meaning does not ebb and flow with the waves of judicial preferences.[14] See Mayor of Lansing v. Pub.Serv. Comm. , 470 Mich. 154, 161, 680 N.W.2d 840 (2004) ("Our task, under the Constitution, is the important, but yet limited, duty to read and interpret what the Legislature has actually made the law. We have observed many times in the past that our Legislature is free to make policy choices that, especially in controversial matters, some observers will inevitably think unwise. This dispute *52 over the wisdom of a law, however, cannot give warrant to a court to overrule the people's Legislature."). We recognize that the application of this principle can sometimes lead to seemingly unfair results. However, any unfairness ultimately derives not from the application of the law itself, but rather from the judiciary's determination to stray from the law. And our first obligation must be to maintain the rule of law.
We therefore must apply the Supreme Court's pronouncement in Spectrum Health . In doing so, we note that it hardly breaks new ground. Rather, it returns us to the foundational principles as expressed by Sir William Blackstone:
*187 For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law , but that it was not law [.] [1 Blackstone, Commentaries on the Laws of England, p. 70.]
The jurisprudential footing of Spectrum Health is therefore both solid and of long standing. And, importantly for purposes of our analysis, its Blackstonian pronouncement lies at the core of the longstanding judicial debate over the proper role of the judiciary generally and the propriety of prospective decision-making specifically. As Justice Scalia stated in Harper :
Prospective decisionmaking is the handmaid of judicial activism, and the born enemy of stare decisis . It was formulated in the heyday of legal realism and promoted as a "techniqu[e] of judicial lawmaking" in general, and more specifically as a means of making it easier to overrule prior precedent....
...The true traditional view is that prospective decisionmaking is quite incompatible with the judicial power, and that courts have no authority to engage in the practice.....
[The dissent] asserts that " '[w]hen the Court changes its mind, the law changes with it.' " That concept is quite foreign to the American legal and constitutional tradition. It would have struck John Marshall as an extraordinary assertion of raw power. The conception of the judicial role that he possessed, and that was shared by succeeding generations of American judges until very recent times, took it to be "the province and duty of the judicial department to say what the law is ," Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (emphasis added)-not what the law shall be . That original and enduring American perception of the judicial role sprang not from the philosophy of Nietzsche but from the jurisprudence of Blackstone, which viewed retroactivity as an inherent characteristic of the judicial power, a power "not delegated to pronounce a new law, but to maintain and expound the old one." 1 W. Blackstone, Commentaries [on *188 the Laws of England] 69 (1765). Even when a "former determination is most evidently contrary to reason ... [or] contrary to the divine law," a judge overruling that decision would "not pretend to make a new law, but to vindicate the old one from misrepresentation."Id . at 69-70. "For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law , but that it was not law ." Id . at 70 (emphasis in original). Fully retroactive decisionmaking was considered a principal distinction between the judicial and the legislative power: "[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases." T. Cooley, *53 Constitutional Limitations *91. The critics of the traditional rule of full retroactivity were well aware that it was grounded in what one of them contemptuously called "another fiction known as the Separation of powers." Kocourek, Retrospective Decisions and Stare Decisis and a Proposal , 17 A.B.A.J. 180, 181 (1931). Prospective decisionmaking was known to foe and friend alike as a practical tool of judicial activism, born out of disregard for stare decisis . [ Harper , 509 U.S. at 105-108, 113 S.Ct. 2510 (Scalia, J., concurring) (citation omitted; alteration in original).]
This Court also discussed these competing judicial philosophies in Lincoln v. Gen. Motors Corp. , 231 Mich.App. 262, 307-308, 314,, 586 N.W.2d 241 (1998) (WHITBECK, P.J., concurring), wherein Judge WHITBECK observed:
As noted by former Justice MOODY[31] "[n]otions of retrospectivity and prospectivity have their roots in two diametrically opposed theories of jurisprudence." The first view, widely attributed to Blackstone, is that courts function to discover and declare the law rather than to make it. Therefore, when judges change legal rules, they *189 do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law; but that it was not law ....[32] Justice MOODY observed that, under this view, a law-changing decision, because it is merely a statement of what had always been the "true" law, must of necessity be retroactively applied.[33] A second view asserts that judges not only discover law but make law.[34] Under this theory, decisions that change the law should not automatically apply retrospectively. The tension between these two views is evident throughout much of our jurisprudence regarding this subject....
* * *
...Applying Blackstone's formulation, the interpretation of the [Worker's Disability Compensation Act, MCL 418.101 et seq .,] in [ Wozniak v. Gen. Motors Corp. , 198 Mich.App. 172, 497 N.W.2d 562 (1993),] was always the "true law" and it must therefore be given full retroactive effect.
With this backdrop, it becomes readily apparent that the underpinnings of Spectrum Health and Harper are one and the same. That is to say, judicial decisions of statutory interpretation must apply retroactively because retroactivity is the vehicle by which *190 "the law" remains "the law."[15] As Spectrum Health dictates, intervening judicial decisions that may have misinterpreted existing statutory law simply are not, and never were, "the law."[16] The necessary *54 consequence is that those decisions of this Court that were overruled by our Supreme Court in Covenant were not "the law" and therefore did not, and do not, afford plaintiff a statutory right to recover PIP benefits directly from an insurer. Because plaintiff has no such right under the pre- Covenant caselaw and because, as our Supreme Court in Covenant determined, plaintiff has no such right under the no-fault act, summary disposition was properly entered in favor of defendants in this case, albeit for reasons other than the pre- Covenant rationale given by the trial court.
In essence, we conclude that our Supreme Court in Spectrum Health essentially adopted the rationale of *191 the United States Supreme Court in Harper relative to the retroactive applicability of its judicial decisions of statutory interpretation to "all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper , 509 U.S. at 97, 113 S.Ct. 2510. Having so concluded, we invite our Supreme Court to expressly state whether or to what extent it adopts the Harper rationale into Michigan state court jurisprudence.[17]
(C). THE "THRESHOLD QUESTION" AND "THREE-FACTOR TEST"
For the foregoing reasons, we conclude that we need not address the "threshold question" and "three-factor test" that have often been cited in Michigan caselaw. The Court's holding in Spectrum Health , which the Court notably reached without so much as a mention of Pohutski , effectively repudiated the application of the "threshold question" and "three-factor test," at least in the context of judicial decisions of statutory interpretation. Even if we were to consider them, however, the result would be unchanged.
First, and for the reasons we have already articulated, we would not get past the threshold question. Plainly and simply, and for the reasons already noted, the law did not change. Covenant did not "clearly establish[ ] a new principle of law," Pohutski , 465 Mich. at 696, 641 N.W.2d 219, because MCL 500.3112 at no time provided *192 plaintiff with a right of action against defendants, and the intervening caselaw from this Court "never was the law." Spectrum Health , 492 Mich. at 536, 821 N.W.2d 117 (quotation marks and citation omitted). Covenant merely recognized that the law *55 as set forth in MCL 500.3112 is and always was the law.
We particularly reach that conclusion under the circumstances of this case because the law at issue concerns the very existence of a right of action. In other words, we are not merely being asked to decide whether a judicial decision of statutory interpretation should be given retroactive effect; we are being asked to decide whether a judicial decision of statutory interpretation concerning the existence of a right of action should be given retroactive effect. We conclude that it would be particularly incongruous for us to decide that Covenant effected a change in the law such that it should not be applied retroactively, because we would effectively be creating law that does not otherwise exist and thereby affording to plaintiff a right of action that the Legislature saw fit not to provide. In effect, we would not only be changing the law from that which the Legislature enacted, but in doing so we would be creating a cause of action that does not exist; for the reasons noted in this opinion, that is outside the proper role of the judiciary.[18]
Were we to advance past the threshold question and consider the three-factor test, the question certainly would become a closer one. But even under pre- Spectrum Health caselaw, we are not prepared to *193 conclude that the factors, taken together, would weigh in favor of the prospective-only application of Covenant . Again, the three factors to be weighed under Pohutski are: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice." Pohutski , 465 Mich. at 696, 641 N.W.2d 219.
With regard to the first factor, our Supreme Court stated in Covenant that the purpose of its decision was to "conform our caselaw to the text of the applicable statutes to ensure that those to whom the law applies may look to those statutes for a clear understanding of the law." Covenant , 500 Mich. at 201, 895 N.W.2d 490. While Pohutski suggests that such a purpose might favor prospective application, Pohutski , 465 Mich. at 697, 641 N.W.2d 219, McNeel found that a rule of law that is intended to "give meaning to the statutory language" and to "clarif[y]" the state of the law weighs in favor of retroactive application, see McNeel , 289 Mich.App. at 96, 795 N.W.2d 205. This apparent divergence of viewpoint itself highlights what is perhaps the most inherent problem with prospectivity: the law requires consistency, see Robinson v. Detroit , 462 Mich. 439, 463, 613 N.W.2d 307 (2000), and prospectivity undermines rather than advances that objective. Instead, the law becomes subject to divergent interpretations depending on the particular tribunal that is then interpreting it.
With regard to the extent of reliance on our prior caselaw, there can be no doubt that plaintiff and others have heavily relied on our prior caselaw over the course of many years. We do not in any way seek to diminish that fact or to minimize the negative effects that might be felt by those who relied on pre- Covenant decisions. The reliance is real, as are the consequences that flow from it. Yet, "[c]omplete prospective application *194 has generally been limited to decisions which overrule clear and uncontradicted case law." McNeel , 289 Mich.App. at 94, 795 N.W.2d 205 (quotation marks and citation omitted). And while *56 plaintiff argues with some justification that Covenant upset "decades of settled expectations" concerning healthcare provider lawsuits, the Supreme Court in Covenant noted that the cases repeatedly cited in support of this "well-settled" principle generally had not actually litigated the issue whether a healthcare provider possessed a statutory cause of action for PIP benefits under the no-fault act. Covenant , 500 Mich. at 200-204, 895 N.W.2d at 495-97. In fact, Wyoming Chiropractic Health Clinic derived from earlier cases that had not directly litigated the right of a healthcare provider to seek PIP benefits from an insurer. Id . at 203 n. 24, 895 N.W.2d 490. And, despite allowing healthcare providers to directly claim PIP benefits from insurers, we have also stated that MCL 500.3112"confers a cause of action on the injured party" and that "the right to bring an action for personal protection insurance benefits ... belongs to the injured party." Hatcher , 269 Mich.App. at 600, 712 N.W.2d 744.
This raises the question of "how reasonable the reliance ... was." McNeel , 289 Mich.App. at 96, 795 N.W.2d 205. On close inspection, it is less than clear that the state of the law that was overturned by Covenant was so "clear and uncontradicted" as to predominate in favor of only prospective application. Id. at 94, 795 N.W.2d 205 (quotation marks and citation omitted). As in McNeel , the mere fact that insurers and healthcare providers may have acted in reliance on the caselaw that Covenant overturned is not dispositive of the question of retroactivity; every retroactive application of a judicial decision has at least the potential to upset some litigants' expectations concerning their pending suits. Id. at 96, 795 N.W.2d 205. And "a return to an earlier rule and a vindication of controlling legal authority" such as the plain language of a statute *195 further supports the conclusion that the overruled caselaw was not "clear and uncontradicted." See Devillers , 473 Mich. at 587, 702 N.W.2d 539 ; Hathcock , 471 Mich. at 484, 684 N.W.2d 765.
Finally, with regard to the administration of justice, we again conclude that the weighing of this factor is at best inconclusive. Plaintiff cites Moorhouse v. Ambassador Ins. Co. Inc. , 147 Mich.App. 412, 422, 383 N.W.2d 219 (1985), for the proposition that "[i]t is essential to the administration of our legal system that practitioners be able to rely upon well-established legal principles...."[19] But in our judgment, that objective is not furthered by a system of justice that allows the law to ebb and flow at the whim of the judiciary. It is instead furthered, and its legitimacy in the eyes of our society is advanced, by demanding consistency in the law, which can only be attained in perpetuity if judicial decisions applying statutory law as enacted by our Legislature are applied retroactively.
Ultimately, even under pre- Spectrum Health caselaw, prospective application of a judicial decision is appropriate only as an "extreme measure," Hathcock , 471 Mich. at 484 n. 98, 684 N.W.2d 765, and in "exigent circumstances," Devillers , 473 Mich. at 586, 702 N.W.2d 539. Considering (as Covenant recognized) that providers have always been able to seek reimbursement from their patients directly or *57 to seek assignment of an injured party's rights to past or presently due benefits, we do not find a level of exigency that would justify contravening the general rule of full retroactivity. *196 d. CONCLUSION REGARDING RETROACTIVITY
We therefore conclude that Spectrum Health controls our decision and that the application of Spectrum Health requires that we apply Covenant retroactively to this case. Further, even if we were to consider pre- Spectrum Health caselaw, we would conclude that Covenant applies retroactively. We therefore affirm the trial court's grant of summary disposition in favor of defendants.
IV. REMAND TO THE TRIAL COURT
The only remaining question is whether this Court should (as plaintiff requested in the alternative in the event we were to conclude, as we do, that Covenant applies to this case) treat the pleadings as amended or remand this case to the trial court to allow the amendment of the complaint so that plaintiff may advance alternative theories of recovery, including the pursuit of benefits under an assignment theory. The Supreme Court in Covenant expressly noted that its decision in that case was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." Covenant , 500 Mich. at 217 n. 40, 895 N.W.2d at 504 n. 40. We conclude that the most prudent and appropriate course for us to take at this time is to remand this case to the trial court with direction that it allow plaintiff to move to amend its complaint so that the trial court may address the attendant issues in the first instance.
Affirmed. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
Swartzle, J., concurred with Boonstra, P.J.

The investigator's report states that an unnamed employee of plaintiff called the investigator with "Zoie on the other line" and relayed information to the investigator from Bonner.

The applicable limitations period may be extended if written notice of injury has been provided to the insurer within 1 year after the accident. MCL 500.3145(1).

Apparently, it was actually Bonner's uncle who owned and purchased insurance on the vehicle.

W A Foote Mem. Hosp. v. Mich. Assigned Claims Plan , unpublished order of the Court of Appeals, issued August 4, 2017 (Docket No. 333360).

The Michigan Assigned Claims Plan is adopted and maintained by the Michigan Automobile Insurance Placement facility. See MCL 500.3171(2).

The parties agree that the statutory section pertinent to this case is that requiring that "no personal protection insurance applicable to the injury can be identified." MCL 500.3172(1). Plaintiff argues that MCL 500.3172(1) does not specify a particular level of diligence that must be exercised in attempting to identify an insurer of the injury. However, it acknowledges that use of the verb phrase "can be" relates to an ability to identify a responsible insurer, as opposed merely to whether such an insurer has in fact been identified. And we must give effect to the words the Legislature has chosen. See Jesperson v. Auto Club Ins. Ass'n , 499 Mich. 29, 36-37, 878 N.W.2d 799 (2016). Assuming (as the trial court found) that some level of diligence is implicit in the statute, plaintiff then suggests that the applicable standard should be that of a "reasonable person" and that it satisfied that standard in this case. We need not decide these issues for the reasons stated later in this opinion.

Indeed, the Supreme Court has remanded one such action to this Court for further consideration in light of Covenant . See Bronson Methodist Hosp. v. Mich. Assigned Claims Facility , 500 Mich. 1024, 897 N.W.2d 735 (2017).

We appreciate that in Hatcher the "party who [was] legally responsible for the injured party's expenses" was the injured party's mother, rather than a healthcare provider. Nonetheless, because Congress has seen fit to declare as a matter of public policy that healthcare providers are obligated in certain circumstances to provide healthcare services without regard to an injured party's ability to pay or insurance status, see 42 USC 1395dd, they to some extent stand in similar shoes as do responsible parents and thus fall within the proscription recognized in Hatcher (and Covenant ).

Without meaning to get ahead of ourselves, our determination that the issue before us is adequately preserved means that we need not decide at this time whether (assuming for the moment that Covenant should apply retroactively) it is full or limited retroactivity that should apply. See McNeel , 289 Mich.App. at 95 n. 7, 795 N.W.2d 205 (noting that a judicial decision with full retroactivity would apply to all cases then pending, whereas with limited retroactivity it would apply in pending cases in which the issue had been raised and preserved). Nonetheless, we note that our Supreme Court has, at times, held that a judicial decision should apply according to the "usual" rule of retroactivity, rather than prospectively, and-albeit without discussing full retroactivity versus limited retroactivity-has added language that is consistent with a holding of limited retroactivity. See e.g., Wayne Co. v. Hathcock , 471 Mich. 445, 484, 684 N.W.2d 765 (2004) (citations omitted), wherein the Court stated,
[T]here is no reason to depart from the usual practice of applying our conclusions of law to the case at hand. Our decision today does not announce a new rule of law, but rather returns our law to that which existed before [Poletown Neighborhood Council v. Detroit , 410 Mich. 616, 304 N.W.2d 455 (1981) ] and which has been mandated by our Constitution since it took effect in 1963. Our decision simply applies fundamental constitutional principles and enforces the "public use" requirement as that phrase was used at the time our 1963 Constitution was ratified.
Therefore, our decision to overrule Poletown should have retroactive effect, applying to all pending cases in which a challenge to Poletown has been raised and preserved.
At other times, the Court has ruled similarly, while noting that "this form of retroactivity is generally classified as 'limited retroactivity,' " see, e.g., Devillers v. Auto Club Ins. Ass'n , 473 Mich. 562, 587 and n. 57, 702 N.W.2d 539 (2005) ("[O]ur decision in this case is to be given retroactive effect as usual and is applicable to all pending cases in which a challenge to [Lewis v. Detroit Auto Inter-Ins Exch. , 426 Mich. 93, 393 N.W.2d 167 (1986) ]'s judicial tolling approach has been raised and preserved."), but without addressing the rationale for when to apply limited rather than full retroactivity. See also Hyde v. Univ. of Mich. Bd. of Regents , 426 Mich. 223, 240-241, 393 N.W.2d 847 (1986) (noting that "the general rule is that judicial decisions are to be given complete retroactive effect," yet holding that "the rules articulated in [Ross v. Consumers Power Co. (On Rehearing ), 420 Mich. 567, 363 N.W.2d 641 (1984) ] should be applied to all cases ... pending either in trial or appellate courts ... which properly raised and preserved a governmental immunity issue"). At still other times, the Court has suggested that limited retroactivity may be appropriate when there has been "extensive reliance" on prior caselaw in order to "minimize[ ] the effect of [a later] decision on the administration of justice." Gladych v. New Family Homes, Inc. , 468 Mich. 594, 606, 664 N.W.2d 705 (2003). This Court has, at times, subsequently cited certain of these and other Supreme Court cases for the rather anomalous proposition that "[g]enerally, judicial decisions are given full retroactive effect, i.e., they are applied to all pending cases in which the same challenge has been raised and preserved ." Paul v. Wayne Co. Dept. of Pub. Serv. , 271 Mich.App. 617, 620, 722 N.W.2d 922 (2006) (emphasis added). See also Clay v. Doe , 311 Mich.App. 359, 362, 876 N.W.2d 248( 2015), quoting Paul , 271 Mich.App. at 620, 722 N.W.2d 922. We therefore invite our Supreme Court to clarify the respective circumstances in which full retroactivity and limited retroactivity should apply.

As noted earlier in this opinion, it is not entirely clear to us whether the general rule of complete retroactivity means full retroactivity or limited retroactivity. Nonetheless, for the reasons noted, it does not matter to our analysis in this case.

We are similarly unpersuaded by defendants' citation of Hall v. Novik , 256 Mich.App. 387, 392, 663 N.W.2d 522 (2003). Defendants contend that Hall implicitly held that when a judicial decision specifies the order to be entered by the trial court on remand (as occurred in Covenant ), rather than merely remanding "for further proceedings consistent with this opinion," it necessarily applied the law to the parties before it, which defendant contends is the legal equivalent of expressly stating that the decision applies retroactively. We believe that defendants overread Hall in advancing this argument.

Specifically, the Court disavowed an earlier opinion of the Supreme Court-and overturned decisions of this Court that applied it-that had recognized a "family joyriding exception" to MCL 500.3113(a) (which prohibited persons who had willingly operated or used a motor vehicle that was taken unlawfully from receiving PIP benefits). We note that the disavowed Supreme Court opinion was a plurality opinion, and the Court in Spectrum Health therefore found that the principles of stare decisis did not apply. Spectrum Health , 492 Mich. at 535, 821 N.W.2d 117.

As noted earlier, the Court in Spectrum Health recognized an exception to that rule. We will discuss that exception later in this opinion.

Spectrum Health effectively repudiated Pohutski on this issue; in Pohutski , the Court stated, "Although this opinion gives effect to the intent of the Legislature that may be ... reasonably be inferred from the text of the governing statutory provisions, practically speaking our holding is akin to the announcement of a new rule of law, given the erroneous interpretations set forth in [intervening judicial decisions]." Pohutski , 465 Mich. at 696, 641 N.W.2d 219.

See Moody, Retroactive application of law-changing decisions in Michigan , 28 Wayne L R 439, 441 (1982).

1 Blackstone, Commentaries on the Laws of England (3d ed. 1884) *69. See also Linkletter v. Walker , 381 U.S. 618, 623, n. 7, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Moody, n. 31, supra at 441.

See Carpenter, Court decisions and the common law , 17 Colum. L R 593, 594-595 (1917).

We emphasize that our decision is limited to the context of judicial decisions of statutory interpretation. We need not and do not consider whether the same principles apply in the context of judicial decisions affecting the common law.

We fully appreciate the conundrum faced by litigants who follow and endeavor to conform their behavior to what they legitimately understand to be the guidance and directives of our courts, only to be confronted with a subsequent judicial change of direction that seemingly pulls the rug out from under them. But we must be true to the law. The remedy is not to be found in a judiciary that adapts the law as and when it sees fit; such judicial policymaking necessarily creates its own inequities. Rather, the remedy, if any, is twofold: (1) adherence to the proper role of the judiciary (such that retroactive application of a judicial decision need never be employed) and (2) in the Legislature. We offer no opinion on the subject of legislative action insofar as it relates to the issues raised in this case; that determination is best left to the Legislature. We do note, however, that healthcare providers, at least in certain circumstances, stand in a far different position than do most other members of our society because they have been mandated to provide certain services without regard to payment or insurance coverage. See 42 USC 1395dd. We therefore encourage the bringing of those concerns to the Legislature and the Legislature's consideration of them.

Again, as noted, the Court in Spectrum Health recognized an exception to the rule. We conclude that the exception is inapplicable in this case, however, because it is premised on parties having made contracts and acquired rights under and in accordance with statutory construction given by the courts of last resort of this state. Spectrum Health , 492 Mich. at 536, 821 N.W.2d 117. In this case, by contrast, plaintiff's suit against defendants is premised on the absence of any insurance contract, and, in any event, the caselaw on which plaintiff relies in bringing suit was not that of a court of last resort of this state, i.e., the Supreme Court.

Counsel for plaintiff acknowledged at oral argument that while he could (and did) identify caselaw in which courts had applied judicial decisions of statutory interpretation prospectively, he was unaware of any such decisions that afforded a right of action when the underlying statute itself did not.

Moorhouse prospectively applied a judicial decision holding that a legal malpractice cause of action is not assignable in Michigan. Moorhouse , 147 Mich.App. at 421-422, 383 N.W.2d 219. There was therefore no underlying statutory law as there is in this case. Moreover, Moorhouse relied on Tebo , see id . at 421, 383 N.W.2d 219, which we conclude was undermined by our Supreme Court's holding in Spectrum Health . In any event, Moorhouse is not binding on this Court. See MCR 7.215(J)(1).