*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTHEAST REHABILITATION &
PHYSICAL THERAPY, INC.,

UNPUBLISHED
September 10, 2019

Plaintiff-Appellant,

v

No. 344497
Oakland Circuit Court
LC No. 2017-160699-CK

DIMITRIOS MATSAMAKIS and MARY
KLADIS-MATSAMAKIS,

Defendants-Appellees.

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this action for breach of contract, plaintiff, Southeast Rehabilitation & Physical Therapy, Inc., sought as damages the unpaid amount of defendant Dimitrios Matsamakis's[1] bills for physical therapy services plaintiff provided to defendant after defendant suffered injuries in a car accident. Although the trial court correctly ruled that there was a contract between the parties, the trial court nevertheless granted defendant summary disposition, ruling that MCL 500.3112 applied to bar plaintiff's claim, notwithstanding the recent Supreme Court decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), which held that it does not. Accordingly, the trial court erroneously granted defendant summary disposition, and we reverse.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant sustained injuries in a December 2012 car accident. As part of his treatment for those injuries, defendant sought and received physical therapy services from plaintiff. When

---

[1] On October 11, 2017, the parties stipulated to dismiss the claims of defendant Mary Kladis-Matsamakis, and she is not a participant in this appeal. Consequently, the singular "defendant" refers to Dimitrios Matsamakis only.

defendant began treating with plaintiff, he signed a "consent to treatment" document that included the acknowledgment that "[defendant] understand[s] it is my primary responsibility to pay [plaintiff] all charges for services rendered irrespective of any disputes or disagreement between insurance companies and myself." Defendant also signed a notice in which he was informed, and acknowledged, that "your insurance policy is between you and your insurance company and not the insurance company and [plaintiff]." Defendant acknowledged that he signed those documents, although he now claims not to have read them before signing. Defendant's health and no-fault auto insurers paid approximately $35,000 to plaintiff during the course of his treatment. Plaintiff asserted that, even after those payments, over $60,000 of charges remained unpaid.

At some point, defendant sued his no-fault insurer for no-fault personal injury protection (PIP) benefits. Several of defendant's other healthcare providers intervened, but plaintiff, despite having notice of it, did not. The PIP lawsuit eventually settled, and defendant filed a motion seeking a distribution of the funds among defendant, his lawyers, and his various providers. Defendant provided a copy of the motion to plaintiff, who was not named as a party in that litigation and did not participate. Nonetheless, the trial court in the PIP case allocated the settlement proceeds and designated "$0.00" to plaintiff.

Plaintiff filed this lawsuit seeking payment from defendant for his unpaid bills. Plaintiff moved for summary disposition asserting that there was no reasonable dispute that plaintiff and defendant had entered into a contract under which plaintiff promised to provide services, defendant promised to pay for services plaintiff rendered irrespective of insurance payments, and defendant failed to fully pay for the services rendered. Defendant also moved for summary disposition, asserting that (1) the PIP settlement extinguished any obligation defendant owed plaintiff because its failure to intervene in the PIP case foreclosed its ability to recover what defendant owed; and (2) a valid contract did not exist between the parties because the signed treatment forms did not contain a specific price term. Defendant relied on the (now-reversed) opinion of this Court in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 313 Mich App 50; 880 NW2d 294 (2015) rev'd 500 Mich 191; 895 NW2d 490 (2017), for the proposition that plaintiff was foreclosed from recovery for lack of participation.

With respect to plaintiff's claim for breach of contract, the trial court ruled that, "as a matter of law," a "written contract existed between the parties." But the trial court nevertheless ruled that under MCL 500.3112, the PIP insurer's settlement with defendant extinguished any obligation by defendant to pay plaintiff, even though plaintiff was not a party to the settlement, because the trial court asserted that plaintiff had notice of the proceeding. The trial court acknowledged the Supreme Court's decision in *Covenant* that explicitly affirmed a provider's right to sue an injured party for unpaid charges, but seemingly concluded that the intermediate appellate decision must be applied because it could not "disturb" the settlement order in the PIP case.[2] The trial court granted defendant summary disposition, denied plaintiff's request for

---

[2] The trial court did not cite any authority for continuing to apply a reversed intermediate appellate court decision or the court rules regarding joinder or intervention to penalize plaintiff for failing to participate in the PIP case that settled.

summary disposition pursuant to MCR 2.116(I)(2), and deemed plaintiff's motion for summary disposition to be moot.

## II. STANDARD OF REVIEW

This Court reviews rulings on summary disposition motions under MCR 2.116(C)(10) de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004).

## III. ANALYSIS

Defendant argues that the parties did not have a contract. We disagree and instead agree with the trial court's determination that, as a matter of law, a contract *did* exist between the parties.

Defendant relies on this Court's opinion in *Zurcher v Herveat*, 238 Mich App 267, 282; 605 NW2d 329 (1999), for the proposition that "price of performance is an essential term" in a contract, and submits that the absence of such a term here means that there is no contract. What defendant fails to appreciate, however, is that while *Zurcher* does in fact identify price of performance as an essential contract term, that case applies only to contracts for the purchase of land and not contracts in general. The rule that is applicable to this case is articulated in *Calhoun Co v Blue Cross & Blue Shield Michigan*, 297 Mich App 1, 14; 824 NW2d 202 (2012), which emphasizes that "the absence of certain terms—including at times the price—does not necessarily render a contract invalid . . . ." In *Calhoun Co*, this Court rejected an argument that a contract failed for indefiniteness just because it failed to provide a specific dollar amount to be paid. In so holding, this Court held that where a contract lacks a specific price term, a reasonable price will be set for the services at issue:

> "*In an appropriate case an agreement may be enforced as a contract even though incomplete or indefinite in the expression of some term, if it is established that the parties intended to be bound by the agreement, particularly where one or another of the parties has rendered part or full performance. Where the price is indefinite, the purchaser may be required to pay and the seller to accept a reasonable price.*" [*Calhoun Co*, 297 Mich App at 15, quoting *J W Knapp Co v Sinas*, 19 Mich App 427, 430-431; 172 NW2d 867 (1969), citing 1 Corbin on Contracts, §§ 95, 96, 99, 102; 5 Williston on Contracts, § 1459; 1 Williston on Contracts (3d ed.), §§ 36, 36A, 40, 41, 49; Restatement, Contracts, § 5 (Emphasis added by this Court in *Calhoun Co*).]

In the present case, defendant claims that there is no contract because the documents defendant signed do not specify a precise dollar amount to be paid. Defendant also asserts, essentially, that plaintiff has presented excessive bills and has already received significant payment from defendant's insurers. The latter arguments have some relevance to the reasonableness of the price to be paid under the contract, but they do not undermine the existence of a contract. The argument that plaintiff has allegedly overbilled defendant, or that plaintiff has billed too much money for the services rendered in light of the amount already paid is one that defendant can present to the finder of fact to determine what the reasonable amount owed under the contract is. See *Calhoun Co*, 297 Mich App at 14-15.

The alleged absence of a price term is the only basis defendant sets forth for arguing that there was no meeting of the minds. Accordingly, the trial court was correct to conclude, as a matter of law, that the parties had a contract under which plaintiff would provide defendant services and defendant would pay plaintiff for them. Also, because there was a contract, defendant's arguments concerning unjust enrichment do not apply, and we decline to discuss them. See *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993).

Defendant next argues that MCL 500.3112 bars plaintiff from suing defendant for defendant's unpaid bills. Both defendant and the trial court placed significant emphasis on the fact that plaintiff did not intervene in defendant's PIP lawsuit against his no-fault insurer. None of the authority defendant presents, however, actually requires a healthcare provider to do so. Defendant relies on MCL 500.3112 for the proposition that his settlement with his no-fault insurer extinguished his liability to plaintiff. MCL 500.3112 provides in relevant part that "[p]ayment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges *the insurer's liability* to the extent of the payments . . . ." (Emphasis added.) However, MCL 500.3112's discharge of the insurer's liability for a provider's bill to an injured person *does not* extinguish any liability of the *injured person* for such a bill.[3]

Defendant relies heavily on this Court's opinion in *Covenant*. In *Covenant*, the injured party settled a PIP claim with the injured party's no-fault insurer that purported to include payments due to the plaintiff healthcare provider. *Covenant*, 313 Mich App at 51-52. The insurer argued that the payment discharged any further liability to the plaintiff for any remaining bills. But this Court held that because the insurer knew of the outstanding bill the plaintiff claimed was still owed, but did not seek an order allocating payment, it could not claim that MCL 500.3112 extinguished its liability to the healthcare provider. *Id.* at 53. Accordingly, the plaintiff provider was permitted to seek payment from the defendant insurer. *Id.* Our Supreme Court reversed this Court's opinion, holding that a healthcare provider has no independent statutory right to payment from a no-fault insurer under the No-Fault Act. Therefore, MCL 500.3112 does not allow healthcare providers to file a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person. *Covenant*, 500 Mich at 195-196. The Court explicitly held that MCL 500.3112 did not govern whether payment by an insurer to an injured party had any effect on the amounts owed by the injured party to a healthcare provider, and it explicitly stated that the provider could pursue its

---

[3] In *Miller v Citizens Ins Co*, 490 Mich 904; 804 NW2d 740 (2011), a no-fault settlement agreement pursuant to MCL 500.3112 was executed, and the benefits were paid to the plaintiff, but her attorney asserted an attorney's charging lien over the proceeds. Our Supreme Court held that the effect of the lien was that the settlement occurred between the insurer, the plaintiff, and her attorney. The Court concluded that the dismissal in light of the settlement "did not have the effect of extinguishing [the medical service provider's] right to collect the remainder of its bill from plaintiff." *Id*. Although this is only an order of the Supreme Court, such orders constitute binding precedent when the rationale can be understood. *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002).

own action against the injured party to recover what it was owed. *Covenant*, 500 Mich at 218. That is, in fact, precisely what plaintiff did here. The *Covenant* decision applied retroactively. See *WA Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159, 176; 909 NW2d 38 (2017). Because the trial court applied the intermediate appellate decision to uphold the settlement agreement in the PIP case, to which plaintiff was not a party, the trial court committed an error requiring reversal.

Accordingly, we reverse the trial court's order granting defendant's motion for summary disposition and remand for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto