*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICKY LEWIS and DAMON WILLIAMS

        Plaintiffs,

and

MICHIGAN INSTITUTE OF PAIN AND HEADACHE, P.C., doing business as METRO PAIN CLINIC,

        Plaintiff-Appellee

v

CITY OF DETROIT,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 341538
Wayne Circuit Court
LC Nos. 16-004421-NI;
16-004042-NF

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

In this action for no-fault benefits, defendant appeals as of right the trial court's order denying its motion for summary disposition and ordering judgment in favor of Michigan Institute of Pain and Headache, P.C., doing business as Metro Pain Clinic (Metro Pain Clinic), in the amount of $37,000 based on defendant's disregarding Metro Pain Clinic's notice of lien when defendant disbursed funds to plaintiffs, Ricky Lewis and Damon Williams, in Lewis and Williams's separate action for no-fault benefits against defendant that arose out of the same automobile accident. Based on our Supreme Court's holding in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), and this Court's subsequent holding in *W A Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159; 909 NW2d 38 (2017), Metro Pain Clinic could not maintain a direct cause of action against defendant. We therefore vacate the trial court's judgment against defendant, vacate the trial court's ruling reinstating Lewis and Williams's case against defendant, and remand for the trial court to enter summary disposition to defendant.

This case arises out of an automobile accident involving a car—in which Lewis and Williams were passengers—and a bus owned by defendant. Metro Pain Clinic treated Lewis and Williams for injuries resulting from the accident. Defendant—who is a self-insured municipality—was first in order of priority to pay Lewis's and Williams's personal protection insurance (PIP) benefits. On March 30, 2016, Metro Pain Clinic filed a complaint against defendant seeking reimbursement for the cost of treating Lewis's and Williams's injuries. On April 5, 2016, Lewis and Williams filed a separate action against defendant, which also included a claim for no-fault benefits. These cases remained separate cases for almost the entire lower court proceedings.

Metro Pain Clinic's complaint was originally assigned to Judge Edward Ewell, Jr., and then Judge Megan Maher Brennan. Lewis and Williams's complaint was originally assigned to Judge Annette Berry. Both cases were eventually reassigned to Judge Sheila Gibson, but were not consolidated.

On May 3, 2017, the trial court—which was now only Judge Gibson, but with two separate cases—held a motion hearing in Metro Pain Clinic's case. Metro Pain Clinic's counsel informed the trial court that defendant and Metro Pain Clinic had agreed to a settlement "for treatment from this accident up to today's date, for $37,000, pending city Council approval." Defendant's counsel agreed, but emphasized that "[o]bviously, the settlement is pending city Council approval." Defense counsel explained that City Council could "not approve" the settlement, and counsel was unsure of when City Council would make its decision.

There is nothing in the record showing that defendant settled with Lewis and Williams, yet on June 8, 2017, Lewis and Williams, in their separate case, moved "to compel settlement release and settlement check." According to the motion, defendant agreed to settle Lewis's and Williams's claims on February 22, 2017, "for a combined total of $21,000." The motion states that the last contact from defendant was informing Lewis and Williams that City Council approval was needed before the settlement could be released. That contact was over two months before Lewis and Williams filed their motion.

Defendant filed a response to Lewis and Williams's motion on June 14, 2017. Defendant explained that the settlement reached by the parties was a "prospective settlement" conditioned on City Council approval. Defendant argued that there was no settlement to enforce until that condition precedent was satisfied.

On June 20, 2017, in Lewis and Williams's action against defendant, Metro Pain Clinic filed two notices of liens. Both notices contained a "lien authorization" signed by either Lewis or Williams. The lien against Lewis was for $21,886.15, and the lien against Williams was for $25,976.15.

On June 23, 2017, Metro Pain Clinic, in its own case against defendant, filed a motion seeking to enforce its settlement of $37,000 that was stated on the record at the May 3 hearing.

On June 28, 2017, defendant filed a response to Metro Pain Clinic's motion that was identical to its response to Lewis and Williams's motion to compel settlement release. The response again explained that the settlement reached by the parties was conditioned on City

-2-

Council approval, and argued that there was no settlement to enforce until that condition precedent was satisfied.

On July 10, 2017, Lewis and Williams signed releases with defendant, releasing defendant

> from all liability, actions, fees, claims, and consequences of every kind which [Lewis and/or Williams] may have against the **Defendant** for any loss or damages, whether presently known or unknown, that may, shall or can arise . . . from an incident that occurred on or about **April 12, 2015** . . . . This Release includes and forever bars [Lewis and/or Williams] right to seek further reimbursement of reasonable and necessary future first-party no-fault benefits.

On July 21, 2017, the trial court held a motion hearing in Metro Pain Clinic's case. Defense counsel began by stating that City Council's decision should be expected within a week, but explained that approval was not guaranteed. Defense counsel stated, "In full disclosure to the Court, however, and I mentioned to sister counsel, we have seen a large number of these cases, in light of *Covenant*,[1] being rejected by city Council. How that's gonna play out in this case, I don't know[.]" Plaintiff's counsel countered that it was her "position [that] once the settlement is put on the record by an attorney, it's a [sic] binding on the client. The City of Detroit -- city Council approval is just a pro forma thing. They don't get to change their mind." The trial court asked plaintiff's counsel if she would adjourn for six weeks because the court found that defense counsel had "made every effort" to get this approved and was only awaiting City Council's approval. Plaintiff's counsel eventually agreed, and the hearing was adjourned to September 15.

Three days after this hearing, on July 24, 2017, Lewis and Williams's action against defendant was dismissed by a stipulated order, signed by the trial court.

On August 1, 2017, presumably after City Council rejected the settlement with Metro Pain Clinic, defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10). In the motion, defendant explained that it recently settled with Lewis and Williams, and following settlement, Lewis and Williams released defendant from all liability. Defendant argued that, because Metro Pain Clinic never received an assignment from Lewis and/or Williams, it was barred from pursuing no-fault benefits on Lewis and/or Williams's behalf based on *Covenant*. Defendant also argued that Metro Pain Clinic had no standing to challenge defendant's settlement with Lewis and Williams because Metro Pain Clinic was not a party to that settlement and, again, did not have an assignment of rights from Lewis and/or Williams.

At the September 15 hearing, Metro Pain Clinic argued that it was unfair that defendant issued settlement proceeds to defendant in spite of Metro Pain Clinic's notice of lien, and argued that defendant should be forced to stand by the settlement that the parties placed on the record at the May 3 hearing. The trial court rejected the latter argument, finding that the settlement was

---

[1] *Covenant* was issued May 25, 2017.

always conditioned on City Council's approval, and without that approval, there was no settlement to enforce. As for Metro Pain Clinic's argument about its lien, the trial court agreed that defendant's actions were unfair, but instructed Metro Pain Clinic that it needed "to take steps to protect its lien," and decided "to leave [defendant's motion for] summary disposition out there."

On October 6, 2017, defendant filed a supplemental brief to its motion for summary disposition. The supplemental brief explained that the Court of Appeals in *WA Foote* held that *Covenant* was retroactive, which defendant argued strengthened its case that Metro Pain Clinic's complaint should be dismissed.

On October 23, 2016, in Lewis and Williams's then-dismissed case, "non-party" Metro Pain Clinic filed a notice of hearing for its "Motion to Reinstate this Case for the Limited Purpose of Enforcing its Notice of Lien against Defendant City of Detroit and Requesting Judgement [sic] Against Defendant City of Detroit Disregarding its Notice of Lien." The lower court record does not include the actual motion that Metro Pain Clinic filed. But there apparently was a motion, because defendant filed a response on October 24, 2017. Defendant's response makes clear that it reached only a "*prospective* settlement" with Metro Pain Clinic, that Metro Pain Clinic never had "a valid and enforceable lien against [defendant]," and that Metro Pain Clinic had no independent cause of action against defendant based on *Covenant*.

On November 6, 2017, Metro Pain Clinic, in its case against defendant, filed an answer to defendant's dispositive motion. In its motion, Metro Pain Clinic first argued that *Covenant* was not applicable to Metro Pain Clinic's settlement with defendant, "[t]hat is, it cannot be applied retroactively to upset settlements that had already occurred prior to its issuance." Metro Pain Clinic argued alternatively that, even if *Covenant* applied, the trial court could invoke its equitable powers "to prevent a miscarriage of justice." Metro Pain Clinic contended that it was unfair to force Lewis and Williams to pay for their medical treatment, and that defendant "duped or cheated" Lewis and Williams into signing a release when they agreed to the settlement. Metro Pain Clinic contended that the trial court had multiple options; it could (1) hold an evidentiary hearing and find that Lewis's and Williams's releases with defendant did not include a release of Metro Pain Clinic's bills, (2) hold that defendant was "equitably estopped from relying on *Covenant* given that Defendant did not" assert that it was raising *Covenant* earlier, or (3) find that defendant's paying Lewis and Williams in spite of defendant's notice of Metro Pain Clinic's lien was an acknowledgment that defendant's settlement with Lewis and Williams did not concern Metro Pain Clinic's bill, so "Defendant is now equitably estopped from arguing that the releases included [Metro Pain Clinic's] bills." Metro Pain Clinic concluded that, "[a]t worst for [Metro Pain Clinic], given that [Lewis and Williams's] settlement did not include [Metro Pain Clinic's] bills, [Lewis and Williams] can be substituted in as Plaintiffs in this action, if the Court determines that [Metro Pain Clinic] may not proceed directly against Defendant because of *Covenant*." Lastly, as a final alternative, Metro Pain Clinic explained that it had an assignment of rights from Williams and was seeking an assignment of rights from Lewis, and contended that it should be allowed to amend its complaint "to comply with *Covenant* to allege a cause of action based on assignments of rights received from the patients[.]" As its relief, Metro Pain Clinic requested that the trial court either deny defendant's motion for summary disposition or order defendant "to show cause why the settlement that was placed on the record in this matter should not be enforced."

On November 10, 2017, the trial court held a hearing on defendant's motion for summary disposition. Defense counsel argued that Metro Pain Clinic's cause of action was barred by *Covenant* because it was not the proper party in interest. In response, Metro Pain Clinic's counsel did not address the *Covenant* issue, but instead argued that defendant had placed the settlement on the record and that the settlement did not include Lewis's and Williams's bills to Metro Pain Clinic. Metro Pain Clinic requested "a ruling that the patient settlement, regardless of what's in the release, did not include our bills." The trial court agreed with Metro Pain Clinic's counsel, but defense counsel objected and argued that the issue of what was encompassed in Lewis's and Williams's releases was "not before the Court today." The trial court disagreed, and the following exchange occurred:

> *Mr. Paddison* [Defense counsel]: Ricky Lewis and Damon Williams were both represented by --
>
> *The Court*: No. Time out.
>
> *Defense counsel*: -- competent counsel.
>
> *The Court*: Time out. I don't care about that. You stood here and stood before me, as an officer of the court, indicating that this case was settled, subject to city counsel [sic] approval. There was no Ricky Lewis counsel here. There was no Mr. Williams['s] counsel here. This was solely as to [Metro Pain Clinic] and you can order the transcripts from both of those dates. This settlement was placed on the record. So, you know, like I said, this -- this -- and this was prior to *Covenant*. So, I don't see how you're gonna go back and backdoor -- you know, I understand it's subject to the city counsel [sic] approval, but the only reason city counsel [sic] did not approve it is because they tried to piggyback this on to *Covenant*. So, at this point in time, I'm denying your summary dis --
>
> *Defense counsel*: So now, your Honor, we have to [sic] separate cases, both involving the exact same bills.
>
> *The Court*: No, you know what? No, we don't, because I'm getting ready to consolidate them. I'm getting --
>
> *Defense counsel*: Your Honor, if I may just finish making my record.
>
> *The Court*: Nope. No, you cannot. I'm getting ready to consolidate them. I am consolidating 16-OO4421-NI and 16-OO4042-NF. I'm denying your motion for summary disposition, because these cases were settled prior to *Covenant*. [Tr V, 5-6.]

The trial court also, albeit later, reinstated Lewis and Williams's case against defendant.

The trial court eventually allowed defense counsel to make a record, but when defense counsel referenced a pre-*Covenant* case, the trial court stopped defense counsel and emphasized that "[w]hat we're talking about here is *Covenant*. I don't care about the case law that preceded *Covenant*. We're here on a *Covenant* issue and that's why that's the basis of your motion. It

-5-

clearly says *Covenant*." Defense counsel attempted to explain that he was citing a pre-*Covenant* case for the proposition that courts must follow the law even if the result is inequitable, but the trial court rejected defense counsel's argument, reiterating that "the fact of the matter remains is that this case was settled before." Defense counsel disputed this characterization of the record, contending that the case was never settled because any settlement was contingent on City Council's approval, and City Council rejected the settlement. Rather than addressing defense counsel's arguments, the trial court restated its rulings and told defense counsel that he could appeal its rulings "if you want to."

The parties then attempted to clarify the trial court's reasoning for its rulings so that they could prepare orders. The trial court reiterated that "there was a separate settlement placed on the record, on May 3rd," and then appeared to change subjects and began taking issue with the release signed by Lewis and Williams. The trial court acknowledged that the release signed by Lewis and Williams was "a standardized release," but found that "whatever [defendant] put in there, that was a miscarriage of justice" because defendant "should not have presented that -- that release to 'em that way," apparently referring to the not-yet-approved settlement between defendant and Metro Pain Clinic. Defense counsel pointed out that Lewis and Williams were represented by counsel who could have clarified what was in the release "[i]f it was that important to them," but the trial court nonetheless faulted defendant because it "prepared the release."

Metro Pain Clinic's counsel then argued that defendant "violated [Metro Pain Clinic's] Notice of Lien" by distributing the settlements to Lewis and Williams without "judicial clarification." Metro Pain Clinic asked for "a ruling on that, because we feel that they improperly paid that check, without taking into account our lien." The trial court ruled that it was going to "grant [Metro Pain Clinic's] relief, enforcing the lien," and told defense counsel he could "take all of this up to" the Court of Appeals. Defense counsel asked for clarification about "what relief [was] being granted," and Metro Pain Clinic's counsel answered that it wanted a judgment in the amount of its lien, and the trial court agreed that this was the relief it was granting. Defense counsel objected, arguing that "you can't simply jump from a lien to a judgment."

What followed is a rather confusing exchange in which the trial court apparently refused to give its reasoning. The full exchange is as follows:

> *The Court*: You know what? The thing is, what is the amount of your -- this can all be -- I'm gonna let the court of appeals sort this out, because the thing is this -- this is an end around. Because, if you would've gone ahead and if the city wouldn't have -- because I know exactly what they did, they said oh, we got *Covenant*; we're not going to pay this now. And they had already -- you know, you preliminary -- because, generally speaking, and you know I worked for the city, if there is a reasonable settlement, the city of -- the city counsel [sic] isn't full of lawyers. They're not lawyers who handle these type [sic] of cases. They take your recommendations. The only reason that this recommendation was rejected was because of *Covenant* and that --
>
> *Defense counsel*: Your [sic] absolutely right, Judge.

-6-

*The Court*: I know. So, that being said -- what was the amount of the proposed settlement?

*Plaintiff's counsel*: It was $37,000, your Honor.

*The Court*: Okay. So I'm giving her judgment in the amount of $37,000.

*Defense counsel*: Your Honor, on what basis?

*The Court*: Because of the fact that, as she indicated, she filed a judgment lien, based upon the representations and after *Covenant* coming down, for her to protect her clients right, because this is what happened, you --

*Defense counsel*: Your Honor, you're --

*The Court*: Stop. Stop. Like I said, stop. This is what I'm doing, I'm done. Thirty-seven thousand dollars.

*Defense counsel*: You --

*The Court*: Take it up --

*Defense Counsel*: Your Honor, I need to make something very clear --

*The Court*: -- to the Court of Appeals.

*Defense counsel*: -- for this record. That is almost double the amount of the settlement. The lien would -- cannot possibly exceed --

*The Court*: What was --

*Defense counsel*: -- the amount of that settlement.

*The Court*: Well, the fact of the matter remains is that we have a problem. I'm going to -- like I said, let the Court of Appeals sort this out. The City of Detroit had entered into an agreement to settle this claim for $37,000. So, like I said, you can have to work that out. Take it up to the Court of Appeals. Let them sort all these cases out.

*Defense counsel*: Okay so, your Honor, we have -- so, is that the final order for both cases, so we can expedite the appeal? Because, now, we have to [sic] cases that have to be consolidated. Then --

*The Court*: They're already consolidated.

*Defense counsel*: Then -- then we have a case --

*The Court*: I've consolidated them today.

*Defense counsel*: Right, okay, I understand.  So, then we had a case where we had a post settlement.  We didn't reject it and now, suddenly we have a judgment, without a trial.

*The Court*: Exactly.

*Defense counsel*: Without a motion for summary disposition.

*The Court*: Exactly.

*Defense counsel*: We now have a judgment.

*The Court*: Exactly.  It's a judgment lien --

*Defense counsel*: And --

*The Court*: It's a judgment lien, because of the fact that was the amount --

*Defense counsel*: Your Honor, what court rule is this based on?  I just want to be clear for the record.

*The Court*: I'm not making a court ruling.  Take it to the Court of Appeals; let them clarify everything.  [Tr V, 18-21.]

Following this hearing, Metro Pain Clinic submitted several proposed orders, which defendant contested.  Among other things, defendant objected to Metro Pain Clinic's proposed order because it stated that it was not a final order and it sought to enter a judgment for $21,000 against defendant, which was less than the trial court's stated amount of $37,000.

On December 1, 2017, the trial court entered an order consolidating Metro Pain Clinic's case against defendant with Lewis and Williams's case against defendant, and administratively closing Metro Pain Clinic's separate action.

At the hearing on defendant's objections to the proposed orders, defense counsel summed up the trial court's ruling, stating, "I think the point was let the Court of Appeals sift this out," to which the trial court responded, "Right."  The parties then began to argue over what the trial court's "intent" was when it made its rulings.  Metro Pain Clinic's counsel argued that the trial court's intent was to "sanction" defendant for violating its notice of lien.  Metro Pain Clinic's counsel contended that the trial court "was implicitly finding" that defendant should have paid Metro Pain Clinic the $21,000 that it had paid to Lewis and Williams based on Metro Pain Clinic's notice of lien.  Metro Pain Clinic also contended that the trial court's judgment was not a final order because Metro Pain Clinic could still recoup from defendant the rest of its cost of treating Lewis and Williams, which amount to approximately $47,000.

In response, defense counsel argued that the trial court "felt, well, look, you had a settlement.  It's a technicality, 37 was the settlement, 37 is the number."  Defense counsel concluded that the judgment closed the case.  The trial court appeared to agree with defense counsel that it was enforcing the settlement, but gave a rather confusing explanation by

-8-

appearing to conflate that it was enforcing the settlement as well as "enforcing" Metro Pain Clinic's notice of lien:

>*The Court*: . . . it was based upon the fact that there was a settlement that was agreed upon that we placed on the record and the fact that the City of Detroit, and I don't want to presuppose the city council's position, but I'm sure it had to do something with *Covenant*. So, that being said, the proposed settlement . . . in the amount of 37,000, that's the number that I was -- that's where I was.

>*Plaintiff's counsel*: So, your Honor, but then we need a clarification from the Court then. Is your Honor finding that there is a settlement and they're required to pay $37,000 or is your Honor entering $37,000 against them for violation of the lien, which my motion was a motion to enforce the lien and -- against those settlement --

>*The Court*: But and they're --

>*Plaintiff's counsel*: -- against those --

>*The Court*: -- and then what I -- what I ultimately said was, based upon the settlement agreement, I'm allowing the lien in the amount of $37,000. That's what I'm saying. Based upon the fact that there was a previous settlement.

>*Plaintiff's counsel*: Okay.

>*Defense counsel*: Now, your Honor, we're assuming that -- and I'm assuming that, just as you didn't want the City of Detroit to get a windfall out of this, let's assume that my position is absolutely wrong and the Court of Appeals smacks us down and says, no, Judge, you and sister counsel got it right? Well, if it's -- you're awarding 37,000, that -- I'm presuming that that doesn't allow them to pursue --

>*The Court*: Right. Exactly.

>*Defense counsel*: -- amounts beyond that.

>*The Court*: Exactly.

>*Defense counsel*: Which is why that -- you were -- the judgment is for $37,000.

>*The Court*: Yeah, the judgment --

>*Plaintiff's counsel*: Your Honor --

>*The Court*: Yes, [plaintiff's counsel], yeah, this time [defense counsel] is right and I'm agree[ing] with him. [Tr VI, 16-18.]

-9-

Metro Pain Clinic's counsel then asked the court if it "would like an order basically saying that, as a sanction for their violation of the liens that were filed in the patient's case, the City of Detroit has to pay $37,000," at which point the trial court cut off Metro Pain Clinic's counsel and told her that "[t]he Court [was] entering a judgment." Plaintiff's counsel then asked if the trial court was ruling that defendant owed $37,000 because "they violated the lien and not based on the fact that the Court is finding that there was a binding settlement," and the trial court responded, "[c]orrect." (Tr VI, 18-19.)

On December 13, 2017, the trial court entered the final order in the case. The order provided that Lewis and Williams's case against defendant was reinstated, that defendant "disregarded" Metro Pain Clinic's notice of lien in Lewis and Williams's case, that a judgment in favor of Metro Pain Clinic against defendant was entered "in the amount of $37,000, for the reasons stated on the record," and that the order was "a final order and it closes the case."

Defendant now appeals,[2] arguing that the trial court erred by denying its motion for summary disposition. We agree.

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Defendant moved for summary disposition in relevant part under MCR 2.116(C)(8). In *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(8) as follows:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [Citations and quotation marks omitted.]

---

[2] We note that Metro Pain Clinic challenges this Court's jurisdiction, but find that challenge wholly meritless. For instance, Metro Pain Clinic argues that the $37,000 judgment was not a final judgment, but "a sanction for disregarding [Metro Pain Clinic's] Notices of Lien." In so doing, Metro Pain Clinic ignores that the trial court expressly rejected this characterization of its ruling. Metro Pain Clinic also continually asserts that the order cannot be a final order because Metro Pain Clinic can continue its case against defendant to collect the rest of its bills—as well as interests and penalties—beyond the $37,000 judgment. But the trial court addressed this too, and rejected the argument. The trial court was clear that its judgment did not allow Metro Pain Clinic to pursue amounts beyond the $37,000 awarded. It is abundantly clear from the record that Metro Pain Clinic argued before the trial court that its order should not be a final order closing the case, and the trial court explicitly rejected that argument. In the order that the trial court signed, it states that it is the final order closing the case, clearly reflecting its ruling from the hearing. To now argue that the order was not actually a final order is disingenuous.

When the trial court ruled on defendant's motion, it held that *Covenant* did not apply. As will be explained, this was error. As for the rest of the trial court's ruling, it is rather confusing. As best we can discern, the trial court ruled in equity that, because defendant ignored Metro Pain Clinic's notice of lien in defendant's separate case with Lewis and Williams, the trial court was going to hold defendant liable for the amount that it settled on with Metro Pain Clinic, $37,000.[3] Rather than attempting to explain this ruling, as the trial court apparently intended for us to do (when defense counsel asked the trial "what was this ruling based on," the trial court responded, "I'm not making a court ruling. Take it to the Court of Appeals; let them clarify everything"), we see no reason to do so because the *Covenant* issue disposes of the entire case.

Metro Pain Clinic's complaint sought PIP benefits from defendant. Defendant moved for summary disposition, arguing that Metro Pain Clinic was not entitled to PIP benefits in light of *Covenant*. In its answer, Metro Pain Clinic argued that *Covenant* did not apply because the parties had agreed to a settlement, and asked the court to order defendant to show cause why the settlement should not be enforced. The trial court ruled, presumably under MCR 2.116(I)(2),[4] that *Covenant* did not apply and that Metro Pain Clinic was entitled to PIP benefits because it would be inequitable to rule otherwise.[5]

---

[3] The trial court, in passing, referred to the $37,000 judgment as a "judgment lien," which it clearly cannot be because, if nothing else, there is no real property involved here. See MCL 600.2801(c) (explaining that a "judgment lien" is "an encumbrance in favor of a judgment creditor against a judgment debtor's interest in real property, including, but not limited to, after acquired property").

[4] MCR 2.116(I)(2) provides, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

[5] Metro Pain Clinic and the trial court attempt to base the ruling on defendant's ignoring Metro Pain Clinic's notice of lien when defendant issued the settlement proceeds to Lewis and Williams. But Metro Pain Clinic's complaint requested PIP benefits, and the trial court granted Metro Pain Clinic relief based on that complaint. And even if Metro Pain Clinic alleged in its complaint that it was entitled to relief because defendant ignored Metro Pain Clinic's notice of entitlement to the PIP benefits, the *Covenant* Court held that such an act does not give rise to a cause of action against defendant because the healthcare provider is not entitled to PIP benefits:

> The second sentence of MCL 500.3112 reads:
>
> > Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person.
>
> This sentence allows a no-fault insurer to discharge its liability through payment to or for the benefit of a person it believes is entitled to benefits, as long as the payment is made in good faith and the insurer has not been previously "notified in

The trial court erred by ruling that *Covenant* did not apply. The *Covenant* Court held:

> [A] review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges. However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [*Covenant Med Ctr, Inc*, 500 Mich at 217-218 (footnotes omitted).]

After *Covenant*, this Court held that *Covenant* is retroactive. *W A Foote Mem Hosp*, 321 Mich App at 196.[6] Thus, despite the trial court's confusing ruling, this case is simple: Metro Pain Clinic sought PIP benefits from defendant, but based on *Covenant*, Metro Pain Clinic had no independent claim for PIP benefits from defendant. And based on *W A Foote*, *Covenant* is retroactive, so it applied to Metro Pain Clinic's complaint. So, in sum, Metro Pain Clinic did not have an independent cause of action against defendant for PIP benefits, and defendant was entitled to summary disposition under MCR 2.116(C)(8).

All of the ancillary issues raised by Metro Pain Clinic are not relevant to this case's disposition. Every one of Metro Pain Clinic's arguments, including its argument for why *Covenant* should not apply, is based in equity. Namely, Metro Pain Clinic argues that the trial court's ruling was fair, and applying *Covenant* to bar its claim would be unfair. But Metro Pain Clinic never explains why the trial court could exercise its equitable powers. It is well established that a court can only grant equitable relief where a legal remedy is not available. *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010). And here, Metro Pain Clinic has a legal remedy available; "a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the

---

writing of the claim of some other person." Plaintiff argues that healthcare providers qualify as "some other person" for purposes of this sentence. Even if this were so, plaintiff still has not demonstrated a legal right of action against a no-fault insurer. The phrase "claim of some other person" does not itself confer on any person a "claim" or "right" to recover benefits. Rather, it presupposes that "some other person" otherwise possesses a claim for PIP benefits against the insurer. Significantly, plaintiff is unable to demonstrate that the no-fault act elsewhere confers on a healthcare provider a right to claim benefits from a no-fault insurer. [*Covenant Med Ctr, Inc*, 500 Mich at 210-211 (footnotes omitted).]

[6] Metro Pain Clinic contends that this Court need not follow *W A Foote* because it is on appeal to our Supreme Court, but that is incorrect, and this Court is still bound to follow that decision. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.").

provider's reasonable charges." *Covenant Med Ctr, Inc*, 500 Mich at 217.[7]  Thus, all of Metro Pain Clinic's equitable arguments are not relevant here.

While the trial court's refusal to grant defendant's motion for summary disposition was error, the trial court compounded this error by reinstating Lewis and Williams's case against defendant.  Because of this compounded error, even if defendant is granted summary disposition against Metro Pain Clinic, Lewis and Williams would still be parties.  To correct this additional error, we hold that Lewis and Williams should never have been parties to this case in the first instance.  Lewis and Williams entered into a settlement with defendant, and based on that settlement, stipulated to dismissal of their case against defendant with prejudice.  Metro Pain Clinic had no basis to move to reinstate Lewis and Williams's case against defendant, and the trial court had no legal basis for granting Metro Pain Clinic's motion.  In short, the trial court erred by reinstating Lewis and Williams's properly-dismissed case against defendant based on Metro Pain Clinic's motion.  We therefore vacate the trial court's rulings to the extent that it reinstated Lewis and Williams's cause of action against defendant, and Lewis and Williams's case continues to be dismissed with prejudice.

The trial court's judgment against defendant is vacated, the trial court's ruling reinstating Lewis and Williams's case is vacated, and the case is remanded to the trial court to enter summary disposition to defendant.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[7] Metro Pain Clinic argues that seeking payment from Lewis and Williams would be unfair to Lewis and Williams.  But, if nothing else, Lewis and Williams received the treatment from Metro Pain Clinic, so it is hardly unfair to hold them liable for payment of that treatment.