*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIVON HUMPHRIES,

      Plaintiff-Appellee-Cross-Appellant,

v

21st CENTURY PREMIER INSURANCE
COMPANY,

      Defendant-Appellant-Cross-
Appellee.

UNPUBLISHED
April 16, 2019

No. 339980
Wayne Circuit Court
LC No. 14-013710-NF

ST. JOHN MACOMB-OAKLAND HOSPITAL,

      Plaintiff-Appellee,

v

21st CENTURY PREMIER INSURANCE
COMPANY,

      Defendant-Appellant.

No. 339981
Wayne Circuit Court
LC No. 15-009319-NF

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, 21st Century Premier Insurance Company (defendant) appeals as of right judgments entered in favor of plaintiffs, Tivon Humphries (Humphries) and St. John Macomb-Oakland Hospital (St. John) and against it. Defendant challenges the trial court's evidentiary ruling and its ruling on defendant's motion for a new trial. Humphries cross-appeals the trial court's entry of directed verdict in favor of defendant concerning replacement services and its failure to award Humphries attorney fees under MCL 500.3148(1). We reverse and vacate the judgment in favor of St. John and against defendant, and order the trial court to enter an order dismissing St. John's claims. We reverse the trial court's entry of a directed

-1-

verdict in favor of defendant concerning Humphries' claim for replacement services, order an amendment of the judgment in Humphries favor, consistent with this opinion, and affirm its order denying Humphries' motion for attorney fees.

Humphries was involved in a car accident on July 25, 2014, and sustained injuries. Defendant, who had issued an insurance policy to Humphries, failed to pay Humphries the benefits he was entitled to under the policy. Humphries thus initiated an action against defendant in October of 2014 (docket no. 339980) to recover those benefits. In July of 2015, St. John filed a declaratory action against defendant alleging that it provided medical care to Humphries for the injuries he sustained in the accident (docket no. 339981). St. John asserted that defendant owed St. John all medical bills incurred by it, relative to the medical services it provided to Humphries under the no-fault act, MCL 500.3101 *et seq.*, and that it refused to pay the benefits owing. These matters were consolidated before the trial court. At the conclusion of a single jury trial, and consistent with the jury's verdict, the court entered a judgment in favor of Humphries in the amount of $400,725.04, plus potential case evaluation sanctions, and taxable costs, and a separate judgment in favor of St. John and against defendant for $55,950.72, plus potential case evaluation sanctions, and costs.

Defendant thereafter moved for a new trial, which the trial court denied. Humphries and St. John moved for attorney fees and case evaluation sanctions and the trial court denied the request for attorney fees made under MCL 500.3148. These appeals followed.

On appeal, defendant contends that the trial court erred in denying its motion for a new trial when its substantial rights were materially affected by the trial court's decision regarding the admissibility of expert testimony. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions. *Id*. We also review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).

In this case, defendant sought to have a biomechanical expert, Steven Rundell, testify that the car accident did not provide enough force to cause Humphries' disc herniations, and at the same time, moved to exclude the testimony of Humphries' accident reconstructionist, Timothy Robbins, asserting that the reconstructionist was not qualified to provide testimony with respect to whether the accident caused Humphries' injuries. Humphries sought to strike any of Rundell's testimony regarding the causation of his injuries. The trial court ordered that both Rundell and Robbins were precluded from testifying about the causation of injuries, but could testify concerning their areas of expertise. According to defendant, the trial court erroneously excluded some of Rundell's testimony and that this exclusion was particularly erroneous when the trial court allowed Robbins to testify outside the scope of his experience and to a non-scientific theory, contrary to MCL 600.2955. Defendant thus asserts that it was denied a fair trial.

MRE 702 addresses the admission of expert witness testimony. The rule provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable. *Kowalski*, 492 Mich at 119. To that end, a court evaluating proposed expert testimony must consider whether the testimony "(1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *Id*. at 120. MRE 702 requires a searching inquiry of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Id*.

In addition, MCL 600.2955 states:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>
> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

The proponent of evidence bears the burden of establishing the relevance and admissibility of the evidence. *Gilbert*, 470 Mich at 781.

In *Gilbert*, the plaintiff was permitted to have a social worker testify that sexual harassment the plaintiff suffered neurologically changed her brain chemistry, which led to changes in the plaintiff's behavior. The social worker's opinion was based on his analysis of medical records from various hospitals and clinics where plaintiff was treated for substance abuse. Our Supreme Court found that the social worker "unquestionably used the content of plaintiff's treatment records to render an opinion that required *medical* expertise." *Id*. at 787. It further stated:

> Where the subject of the proffered testimony is far beyond the scope of an individual's expertise—for example, where a party offers an expert in economics to testify about biochemistry—that testimony is *inadmissible* under MRE 702. In such cases, it would be inaccurate to say that the expert's lack of expertise or experience merely relates to the weight of her testimony. An expert who lacks "knowledge" in the field at issue cannot "assist the trier of fact." [*Id*. at 789]

The *Gilbert* Court concluded that "the faux 'medical' opinion of an individual who lacked any medical education, experience, training, skill, or knowledge became the linchpin of plaintiff's case and unmistakably affected the verdict." *Id*. at 783.

In this matter, Rundell testified at his deposition that he was not a doctor and could not give opinion testimony based on medical theories. Rundell, having no medical background, thus could not testify as to the existence or lack of a medical condition and any causal link between an accident and an alleged injury. As in *Gilbert*, testimony concerning the cause of a medical injury was beyond the scope of Rundell's expertise. His testimony concerning a medical injury would not have been reliable, scientific, or other specialized knowledge that he possessed as an expert in biomechanics and thus would not have assisted the jury. The trial court did not abuse its discretion in limiting Rundell's testimony to that in his field of expertise—biomechanics.

The trial court also did not abuse its discretion in allowing Humphries' expert, Robbins, to testify as he did. While the trial court admitted it should not have allowed Robbins to testify as a rebuttal witness to Rundell's testimony, the parties discussed having Robbins as a rebuttal witness due to his unavailability at trial and defendant stated that it had no issue with Robbins testifying on rebuttal.

Robbins, an accident reconstructionist, was limited in his testimony in the same way that Rundell was—to his field of expertise. Robbins was not, as defendant claims, questioned just from a "common sense," rather than scientific, standpoint. Robbins presented his qualifications and training to the jury and testified that he looked at vehicle photographs, vehicle specifications, the roadway and roadway design, and statements and testimony of other witnesses. Robbins

testified that reconstructionists put pieces back together in a scientific method to determine what happened. While certain elements of Robbins testimony were based on "common knowledge" such as that if one knows his body is going to be shaken violently, one would generally brace or prepare for what was coming, that some testimony is based on common sense does not make Robbins unqualified to render an expert opinion on how the accident at issue occurred and the potential force involved in the accident.

Finally, though defendant filed a pretrial motion in limine to preclude Robbins from testifying because he was not qualified to rebut a biomechanics expert testimony, the trial court properly found that Robbins, as an accident reconstructionist, was going to provide testimony that was somewhat similar to Rundell and that he could testify based on his knowledge and experience regarding force. Defendant called Rundell as an expert to establish that the accident was minor and did not provide enough force to cause Humphries' injuries. An accident reconstructionist could refute how significant the accident was and the force that was put on Humphries' vehicle, which was a significant issue at trial. And, at trial, defendant's counsel stated that it had no problem with Robbins being called as a rebuttal witness. Defendant was not denied a fair trial by the admission of Robbins' testimony and was not entitled to a new trial based upon the admission of his testimony.

Defendant also claims it was denied a fair trial by virtue of the attorney for St. John making statements during his closing argument allegedly intended to mislead the jury with respect to attorney misconduct. Specifically, during closing argument, St. John's counsel stated:

> We have Dr. Rundell. I'm not going to go over Dr. Rundell's testimony or Dr. Robbins' testimony, you've heard it over and over again. But I would like to point out one thing. Regardless of the side swiping, his opinion, or the spin action, think about his opinion. He never offered an opinion with respect to whether or not the disk injury was related to the accident.

Defendant asserts that these statements amounted to attorney misconduct by St. John's counsel since the trial court had specifically ruled that Rundell was prohibited from testifying to whether the accident caused Humphries' injuries. We disagree.

"An attorney's comments do not normally constitute grounds for reversal unless they reflect a deliberate attempt to deprive the opposing party of a fair and impartial proceeding." *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). "Reversal is required only where the prejudicial statements" reveal a deliberate attempt to inflame or otherwise prejudice the jury, or to "deflect the jury's attention from the issues involved." *Id.* Even where an attorney may have attempted to deliberately inject something improper into a case, reversal is unwarranted unless the comments had the actual effect of diverting the jury's attention from the issue or otherwise control the verdict. *Knight v Gulf & Western Properties, Inc*, 196 Mich App 119, 132-133; 196 NW2d 119 (1992). Misconduct of counsel will also not justify a new trial if the error was harmless. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 501-502; 668 NW2d 402 (2003).

The challenged statement was brief and defendant's counsel immediately objected, stating that just because it was closing argument "doesn't mean that I can't object when there

were things that were not supposed to be discussed in this case that the court ruled on." Thus, defendant's counsel brought it to the jury's attention that St. John's counsel was attempting to bring in something that the trial court had prohibited. And, there was no indication that the brief comment diverted the jury's attention from the issue. Both parties had presented the testimony of medical experts regarding Humphries' injuries and their causation. Moreover, the trial court instructed the jury that attorney statements are not evidence and that the evidence the jury was to consider consists of the testimony of witnesses and any exhibits offered and received. Thus, even if the brief comment was improper, any error was rendered harmless by the court's instruction. The trial court correctly determined that defendant was not entitled to a new trial based upon attorney misconduct.

Finally, defendant asserts that the cumulative effect of the trial court's errors was added to due to the fact that St. John has no standing to sue in this case per *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 195; 895 NW2d 490 (2017). We agree that St. John has no standing to bring its claim against defendant.[1]

In *Covenant*, 500 Mich 191, our Supreme Court held that healthcare providers do not have a statutory right to bring a cause of action against an insurer to recover PIP benefits under the no-fault act. In *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 176, 199; 909 NW2d 38 (2017) this Court held that *Covenant* applies retroactively, i.e., that it "applies to all cases still open on direct review." *Id.* at 176, 196.

The instant case was still proceeding in the trial court when the *Covenant* opinion was issued, and it is now before this Court on direct review. Therefore, *Covenant* applies retroactively to the instant case. *Id.* St. John's claims against defendant were for breach of contract and for declaratory relief. Under *Covenant*, St. John has no independent standing for breach of contract against defendant and may not maintain a direct action against defendant to recover PIP benefits allegedly owed by defendant for services St. John provided to Humphries related to his medical care. *Covenant*, 500 Mich at 195-196.

Though St. John asserts that defendant did not raise the issue of standing before the trial court, in *Bronson Healthcare Group, Inc v Michigan Assigned Claims Plan*, 323 Mich App 302, 305-306; 917 NW2d 682 (2018), this Court clarified that *Covenant* was to be applied to cases even where the issue of standing or legal capacity to sue was never raised before the trial court. *Bronson Healthcare* stated, "we have previously rejected preservation arguments relating to *Covenant* and exercised our discretion to review *Covenant* arguments that were not raised before, addressed and decided by, the trial court." *Id.*, citing *W A Foote*, 321 Mich App at 173-174; *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 714719; 916 NW2d 218 (2018) (holding that a consent judgment entered into in favor of a medical provide did not result in the insurer's waiver of opportunity to challenge the provider's standing).

---

[1] St. John argues that it would be fundamentally unfair to conclude on appeal – especially with very little advocacy by defendant – that *Covenant* bars its claim. But because St. John raised the *Covenant* issue in its brief on appeal, it is not fundamentally unfair to consider the issue.

Here, that St. John and defendant had tried the case before a jury is a distinction from *Covenant*, *W. A. Foote*, and *VHS* of no significance. *W A Foote*, 321 Mich. App. at 191 (quotation marks omitted), clearly states that the *Covenant* decision was to be applied in "all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." The phrase "all cases" must necessarily include verdicts, and even judgments, that happened before *Covenant* was decided in cases still open on direct appeal. This Court has held that "there cannot be any broader classification than the word 'all,' and 'all' leaves room for no exceptions." *Peters v Gunnell, Inc*, 253 Mich App 211, 223; 655 NW2d 582 (2002) (citations omitted). Our application of *Covenant* to this case is consistent with general principles of retroactivity.

St. John, as a medical provider, brought a direct claim against defendant under the no-fault act. Pursuant to *Covenant*, 500 Mich at 196, St. John had no legal authority to do so, absent the existence of an assignment of rights from the insured (of which there is no indication and is unlikely considering that St. John and Humphries *both* proceeded to trial against defendant). The judgment in favor of St. John and against defendant must therefore be vacated.

On cross-appeal, Humphries contends that the trial court committed reversible error when it granted defendant's motion for a directed verdict and struck Humphries' claim for replacement services. We agree.

This Court reviews de novo a grant or denial of a motion for directed verdict. *Aroma Wines & Equip, Inc v Columbia Distrib Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013). The evidence, and any reasonable inferences therefrom, must be viewed in the light most favorable to the non-moving party, and the motion granted only if there is no factual dispute or reasonable jurors could not differ. *Id.*

MCL 500.3107(1)(c) provides for the payment of replacement services as a no-fault PIP benefit as follows:

> Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

Consistent with the statutory language, the insurance policy issued by defendant provides for the payment of replacement services "not exceeding $20.00 per day, the insured . . . reasonably incur in obtaining the benefit of ordinary and necessary services in lieu of those that the insured would have performed during the first three years after the date of the accident . . . ."

Defendant does not allege that Humphries did not require replacement services or deny that he has certificates stating that he requires the same. The only issue defendant brings with respect to replacement services is that there was no testimony or evidence in the record that defendant's wife expected to be compensated for the replacement services she provided and no record evidence of the daily rate she was seeking. We disagree.

In an October of 2016 joint pre-trial order, the parties stipulated to the admission of certain exhibits at trial, including replacement services proofs and defendant's full and complete PIP file. These documents included ones where defendant's wife filled out household services statements for the dates of July 25, 2014, through August 31, 2014. Then again for the month of October 2014 and for every month from November of 2014 through June of 2015. She also prepared an affidavit of household services on August 4, 2014, stating that she performed replacement services for Humphries from July 25, 2014, "through the present and ongoing." The affidavit further states that "I am claiming $20 a day from July 25, 2014, through August 2014 and ongoing."

Though Humphries' wife did not testify at trial and Humphries testified only in general terms of what his wife did as far as services after he was injured, the documentary evidence established that Humphries' wife performed replacement services for him and expected to be compensated for the same at a rate of $20.00 per day. Ultimately, the determination under the no-fault act of what is a reasonable charge is for the trier of fact. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 454; 814 NW2d 670 (2012). The documentary evidence presented in the household services statements and the affidavit of Humphries' wife was sufficient to allow the jury to adequately calculate the approximate amount of replacement services to which plaintiff was entitled. The trial court thus erred in granting defendant's motion for directed verdict as to the replacement services.

Humphries next contends that the trial court erred in failing to award him attorney fees requested pursuant to MCL 500.3148(1). We disagree.

A trial court's decision concerning whether an insurer acted reasonably in withholding benefits (such that they should pay attorney fees) involves a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*. Questions of law are reviewed de novo, and a trial court's findings of fact are reviewed for clear error. *Id*.

The no-fault act provides for an award of reasonable attorney fees to a claimant if the insurer unreasonably refuses to pay the claim. Specifically, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

This statute establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in post judgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1); *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008).

An insurer's refusal or delay places a burden on the insurer to justify its refusal or delay, and the insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. *United Southern Assur Co v Aetna Life & Cas Ins Co*, 189 Mich App 485, 492; 474 NW2d 131 (1991). The determinative factor in the trial court's inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable. *Ross*, 481 Mich at 11.

Here, defendant, through its adjuster Timothy McQuillan, testified that the emergency room said Humphries had a possible cervical strain, and was released back to work. McQuillan testified that he looks at several things when evaluating a claim for an objective injury, including statements, vehicle damage, accident severity, medical records, and witnesses.

McQuillan testified that he sent a letter to Humphries' attorney on September 14, 2014, stating the inconsistencies he found, and stating that the insurance company may not be able to pay off the claim. McQuillan testified that just because the hospital told Humphries to follow up with his primary care physician doesn't mean that an insurance payout had to be made. McQuillan testified he received the emergency room medical records on October 28, 2014. He testified that he did not pay for physical therapy because Humphries utilized that service at the direction of his primary care doctor.

When Humphries filed his complaint on October 23, 2014, it appears that defendant had very limited records. It only had the police report, which indicated a sideswipe car accident with minimal damage to the car and no injuries and a bill from a spinal rehabilitation facility. Thus, Humphries had not yet provided a reasonable proof of loss to defendant prior to his filing of the complaint (MCL 500.3142(2)) and the benefits sought were not yet overdue. And, defendant obtained a biomechanical expert, Rundell, who began analyzing the data concerning the crash and forces in December of 2014. His report was final in May of 2015, and concluded that the accident at issue could not have had enough force to have caused Humphries injuries. Given the information defendant had, defendant's *initial* decision to refuse or delay payments was not unreasonable. *Ross*, 481 Mich at 11. The trial court properly denied an award of attorney fees under MCL 500.3148.[2]

We vacate the judgment in favor of St. John and against defendant and order the trial court to enter an order dismissing St. John's claims. We reverse the trial court's entry of a

---

[2] Humphries cites to *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 582; 887 NW2d 205 (2016), for the proposition that an insurer is not allowed time beyond the statutory 30 days to conduct its own investigation regarding the eligibility of the claimant to receive benefits. However, that case pertained to an *assigned* insurer under the Michigan Automobile Insurance Placement Facility, which only itself assigns a claim to an insurer after reviewing a claimant's eligibility. *Id*.

directed verdict in favor of defendant concerning Humphries' claim for replacement services, order an amendment of the judgment in Humphries' favor consistent with this opinion, and affirm its order denying Humphries' motion for attorney fees. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro